O’NIELL, C. J.
 

 This is a suit on a bond for $5,000 given by E. E. Davidson as principal with the Afltna Casualty & Surety Company as surety. The court gave judgment against the defendants, in solido, for the amount of the bond; from which they have appealed.
 

 The bond was given to guarantee that Davidson would perform his obligations under a contract to drill for oil and gas on lands on which the plaintiff held a mining lease. Plaintiff therefore sued for a recission for breach of the contract, and prayed also for a judgment against Davidson for $2,298.-56, alleged to be the value of a royalty of oneeiglitli of the oil produced by Davidson under the contract. That part of the suit, however, is not now at issue. In the judgment appealed from, the contract was rescinded; and Davidson admits that the decree in that respect is correct. At the same time the court rendered a judgment of nonsuit on the plaintiff’s demand for $2,298.56 royalty, and he did not appeal or file an answer to the defendants’ appeal. The issues presented by the appeal, therefore, are confined to the suit on the bond.
 

 Before answering, the defendants pleaded that the court was without jurisdiction, ratione personas, because neither of the defendants was domiciled in the parish of Union, where the suit was brought. The plea to the jurisdiction was overruled on the ground that the suit was mainly a real action and was therefore within the jurisdiction of the court in whose jurisdiction the land was situated. Davidson, as appellant, does not insist upon his plea to the jurisdiction. In fact, he has virtually abandoned it by asking that the judgment be affirmed in so far as it rescinded the contract and dismissed the plaintiff’s demand for a royalty of $2,298.56, and by asking that the judgment be otherwise reversed and the suit on the bond dismissed and rejected. As the plea to the jurisdiction ratione personas was one which Davidson had the right to waive, we doubt that the surety company can object to the waiver. That is a matter of no importance, however, in our view of the case on its merits.
 

 The contract was dated September 1, 1923, and was as follows, viz.:
 

 “Whereas, the first party [Godwin, trustee,.] is the owner, of certain mineral leases on lands situated in the parish of Union, state of Louisiana, described as the northeast quarter of northeast quarter, * * * containing
 
 in
 
 the aggregate 320 acres, more or less; and
 

 “Whereas, the said lands are believed to contain oil and gas, and the second party [Davidson] is desirous of drilling and exploiting the same in search of said minerals at his own expense, and said first party desires such exploitation; and
 

 “Whereas, said second party will begin actual drilling of a well on some portion of said lands within thirty (30) days of September 10, 1923, and actively and diligently prosecute the drilling thereof to a depth of twenty-five hun
 
 *807
 
 dred (2,500) feet, unless oil or gas be found in paying quantities at a less depth; and
 

 “Whereas, said second party binds and obligates himself to complete said well within ninety (90) days from and after the date of commencement thereof; and,
 

 “Whereas, said first party shall receive a net over-riding royalty of one-eighth (1/8) of all oil and gas produced and saved from said property, said royalty to be in addition to and above any and all other royalties whatever heretofore granted, free of cost whatever to said first party; and,
 

 “Whereas, said second party will make bond in favor of first party in the sum of five thousand dollars ($5,000.00) with surety satisfactory to first party, conditioned for the faithful performance of the obligations herein assumed:
 

 “Now, therefore, the said parties, in consideration of the mutual covenants and agreements herein contained to be kept and performed, have contracted as follows:
 

 “The said second party hereby agrees, binds and obligates himself, his heirs and assigns, to begin the actual drilling of a well on some portion to be selected by him of the above described lands within thirty .(30) days of September 10, 1923, and actively and diligently to prosecute - the drilling thereof to a total depth of twenty-five hundred (2,500) feet, unless oil or gas be found in paying quantities at a less depth, and the same to complete within ninety (90) days from the beginning thereof, and agrees; binds and obligates himself, his heirs and assigns, to defray the whole and entire expense of said drilling operations, and all other expense and cost incident thereto, so that the first party shall be required to make no outlay or expense whatever in connection with any well or wells herein provided for.
 

 “Said second party further binds and obligates himself, his heirs, successors and assigns, to drill a well, to the depth hereinabove specified unless oil or gas should be found in paying quantities at a less depth, and within the period hereinabove specified, on each of the 40-acre tracts hereinabove described, and not more than thirty (30) days shall elapse between the completion of any well and the beginning of drilling of another.
 

 “It is specially understood and agreed, however, that, in case oil or gas should be found in paying quantities in or under said lands, then-and in that event the party of the second part shall deliver to the party of the first part free of cost the equal one-eighth (1/8) of all oil or gas so discovered, produced and saved, which said royalty shall be a net, overriding royalty, that is to say, a royalty in addition to and above any and all other royalties whatever heretofore granted.
 

 “First party hereby grants to second party all rights of ingress and egress, and other similar rights granted to him in connection with his leases on said lands, and second party agrees and hereby binds and obligates himself to pay all damages occasioned to said lands or the crops and timber growing thereon, and the fences and other improvements thereon being.
 

 “For the faithful performance of which undertakings on the part of the party of the second part, the said party hereby agrees to furnish bond in the sum of five thousand dollars ($5,000.00) with surety satisfactory to first party, and this contract shall not become effective until said bond will have been furnished, delivered and approved; provided, party of the second part may, ninety (90) days after beginning to drill said lands, relieve himself of liability under said bond by forfeiting this contract, and provided further that failure to drill, as hereinabove provided, to the depth and within the period aforesaid, shall be considered and taken as an active breach hereof.”
 

 The bond, dated one day before the date of the contract, was as follows, viz.:
 

 “Be it known that Ralph E. Davidson, of Gaddo parish, La., as principal, and the JEtna Casualty & Surety Company of Hartford, Conn., herein represented by its duly authorized attorney in fact, Robert C. Jordan, Jr., of Caddo parish, La., as surety, are held and firmly bound by these presents unto C. H. Godwin, trustee, hereinafter called the obligee, in the full sum of five thousand ($5,000.00) dollars, for the payment of which, well and truly to be made we bind ourselves, our heirs, executors, administrators and assigns firmly and in solido by these presents.
 

 “Dated at Shreveport, La., this 31st day of August, 1923.
 

 “The condition of the above obligation is such that, whereas the above bounden Ralph E. Davidson has entered into a written contract with the said C. H. Godwin, trustee, wherein the said Davidson agrees to drill a well for oil or gas, in township twenty-three (23) north, of range one (1) east, La. Meridian, to a depth of twenty-five hundred (2,500) feet, unless oil or gas be found in paying quantities at a less depth, within ninety (90) days from the beginning of drilling operations on said well; which contract is dated the 1st day of September, 1923, and hereinafter called the contract, being made a part hereof, and a copy of which is attached hereto:
 

 
 *809
 
 “Now, therefore, if the said Ralph E. Davidson, principal, shall well and truly perform the obligations as set forth in the contract, and each and all of them, this obligation shall be null and void and of no effect; otherwise, to remain in full force and effect.”
 

 The lands described in the contract were six 40-acre tracts, one in each of six adjoining sections, and one 80-acre tract in another adjoining section, all in township 23 north, range 1 east.
 

 The defendants contend that the bond was given only to guarantee the drilling of the well which was to begin within 30 days after the 10th of September, 1923, and be completed within 90 days after its beginning. The drilling of the well was begun and completed within the time stipulated, and the well produced oil in what was thought to be “paying quantities,” but after being pumped for nearly a year it petered out. While that well was being pumped, Davidson drilled two other wells on two other 40-acre tracts, both of which wells were failures, one producing salt water with a slight showing of oil, and the other being a dry' hole. Having spent, necessarily, over $125,000 on the three wells, Davidson abandoned the work.
 

 It is argued in the plaintiff’s brief that Davidson violated his contract by ceasing drilling on the first well at a depth of only 2,217 feet, instead of proceeding to the depth of 2,500 feet. There was no such complaint when the well was completed at that depth, and no such complaint in the plaintiff’s petition. It was according to the best judgment of the experts that the production of oil found at the depth of 2,217 feet justified completing the well at that depth instead of proceeding to a depth of 2,500 feet. The reason why the production proved to be not profitable was that no other wells drilled in that territory produced oil or gas in paying quantities, no oil field was developed, no pipe line came into the territory, and there was therefore no market for the oil produced from Davidson’s well. There was no violation of the contract in that respect or in the drilling of either of the two other wells drilled by Davidson.
 

 Plaintiff alleged and specified in his petition that the contract was violated in two particulars, and did not allege that there was any violation other than in those two particulars, viz.: (a) That Davidson failed to deliver or pay for the one-eighth of the oil produced ; and (b) that he failed to drill a well to the depth specified and Within the time specified, “on each of the 40-acre tracts herein described, more than thirty (30) days having elapsed between the completion of those wells drilled and the beginning of drilling of another.”
 

 There was no violation of the contract in Davidson’s failure to deliver or pay for one-eighth of the oil he produced. He did pay for one-eighth of the oil that was sold, and the plaintiff gave him credit for the amount in the petition. The rest of the oil produced— except what Davidson used for fuel in drilling the second and third well — -remained in the tanks on the land, and the quantity remaining appears to have been far more than one-eighth of the production. The evidence in that respect, however, was not sufficiently definite to allow the court to render a judgment for any sum.
 

 The only question in the case is whether the plaintiff is entitled to recover on the bond the $5,000 as liquidated damages for Davidson’s failure to drill- five more wells, one on each 40-acre tract, all to the depth and within the periods stated in the contract. Plaintiff did not allege or attempt to prove that he suffered any loss, or was deprived of any profit, by Davidson’s failure to drill more than the three wells. Plaintiff’s theory is that the bond was given ¿s a penal clause to guarantee that Davidson would pay $5,000 as a penalty if he should fail, even partly, in the performance • or completion of his contract. The defendants, on the other hand, contend
 
 *811
 
 that the bond was given to guarantee that Davidson would complete the drilling of the well which was to be commenced not later than the 10th of October, 1923, and. be completed within 90 days thereafter; and that, when the contract was complied with in that respect, Davidson was liable, not for the payment of $5,000 as a penalty for any failure to perform any further obligation, however slight, but for the payment of any damages which the plaintiff might actually suffer in consequence of any breach of the contract on Davidson’s part. Though the language of the contract is not altogether clear in that respect, the defendants’ interpretation of it is more plausible than the plaintiff’s. The parties knew that Davidson would, as a matter of self-interest, and without being compelled by a bond to that effect, drill another well if the first well should produce oil in paying quantities, and would continue drilling wells so long as it continued to be profitable to liim, but he was not compelled, under penalty of the bond, to continue the enormous expense of drilling wells, to the number of eight wells, if the first well or each well should produce only salt water or be a dry hole. That is why it was stipulated, in the last clause of the contract, that, 90 days after beginning the drilling, meaning after completing the first well, Davidson might relieve himself of liability under said bond by'forfeiting the contract. He did not forfeit or abandon the contract when the first well was completed; and it may be that he would have incurred the penalty of the bond if he had" failed to complete either of the two other wells which he ■drilled. And it may be that the bond remained in force, after the completion of the first well, to secure the plaintiff against any actual loss that he might have suffered, or profit that he might have been deprived of, by any subsequent breach of the contract by Davidson, as, for example, if Davidson had failed to pay any part of the one-eighth royalty due to the plaintiff. Those questions are not at issue in the case, because, as far as the plaintiff’s allegations and proof go, he might have had five more wells drilled by some other contractor on as favorable terms as those on which Davidson was to drill the wells.
 

 In the sixth and last paragraph of the preamble to the contract,- it was said that the bond was to be given for the faithful performance of the obligations therein assumed by Davidson; but, in each preceding paragraph, beginning with the word “whereas,” the obligations referred only to the well which was to be drilled within 90 days from the 10th of September, 1923. There was no stipulation for the drilling of any other well, in the preamble to the contract, preceding the stipulation for a bond; and in the condition of the bond itself it was said: “Whereas * * * the said Davidson agrees to drill a well,” etc. It is true that the condition of the bond was that Davidson should perform the obligations set forth in the contract, “and each and all of them”; hut that must be taken in connection with all else that was said in the bond and in the contract.
 

 It is not necessary in this case to decide', and we do not decide, whether the bond was intended to guarantee any further obligation on the part of Davidson than his obligation to begin drilling a well not later than the 10th of October, 1923, and to complete it according to the specifications within 96 days thereafter. So far as the bond guaranteed that Davidson would faithfully perform each and all of his obligations, it must be borne in mind that the contract was at least partially performed, and so far as it was performed it was done faithfully and well. The case is therefore governed by the articles (1930-1934) of the Civil Code on the subject, “Of the Damages Resulting from the Inexeeution of Obligations,” and the articles (2117-2127) on the subject, “Of Obligations with Penal Clauses.” Article 1934, subd. 5, is directly in point, viz.:
 

 
 *813
 
 “Where the parties, by their contract, have determined the sum that shall be paid as damages for its breach, the creditor must recover that sum, but is not entitled to more. But when the contract is executed in part, the damages agreed on by the parties may be reduced to the loss really suffered, and the gain of which the party has been deprived, unless there has been an express agreement that the sum fixed by the contract shall be paid, even on a partial breach of the agreement.”
 

 The articles in the section, “Of Obligations with Penal Clauses,” are also appropriate, viz.:
 

 “Art. 2117 (2113). A penal clause is a secondary obligation, entered into for the purpose of enforcing the performance of a primary obligation.”
 

 “Art. 2118 (2114). A penal obligation necessarily supposes two distinct contracts, one to do or to give that which is the principal object of the contract, the other to give or do something, if the principal object of the agreement be not carried into effect.”
 

 “Art. 2125 (2121). The penal clause is the compensation for the damages which the creditor sustains by the non-execution of the principal obligation.
 

 “He cannot demand the principal and the penalty together, unless the latter be stipulated for the mere delay.”
 

 “Art. 2127 (2123). The penalty may be modified by the judge, when the principal obligation has been partly executed, except in case of a contrary agreement.”
 

 Article 2127 is virtually a repetition of the last sentence in article 1934, subd. 5. Both articles provide that, even though a contract stipulates the penalty or damages that shall be paid if the contract be breached, nevertheless only the damages actually suffered ought to be allowed if the contract be breached after being partly executed. In this case the contract was partly executed — and executed well and faithfully as far as it was executed —and there is neither allegation nor proof that the plaintiff suffered any loss, or was deprived of any gain, by the defendant’s failure to complete the execution of the contract.
 

 The judgment appealed from is correct, of course, in so far as it rescinded the contract, and in so far as it dismissed the plaintiff’s demand for royalty, as of nonsuit; but the suit on the bond for $5,000 should have been dismissed, also, as of nonsuit.
 

 The judgment is affirmed in so far as it rescinded the contract between the plaintiff and the defendant Davidson, dated the 1st of September, 1923, and in so far as it dismissed as of nonsuit the plaintiff’s demand for $2,298.56 royalty; and the judgment is annulled in other respects, and the plaintiff’s suit on the bond for $5,000 is therefore dismissed as of nonsuit. The defendants are to pay the costs incurred in the district court, and the plaintiff the costs of appeal.