187 So. 650

FITE v. MILLER.

No. 34788.

March 6, 1939.

Lee & Lee, of Shreveport, for appellant.

Craig & Magee, of Mansfield, for appellee.

O'NIELL, Chief Justice.

The plaintiff is appealing from a judgment dismissing his suit on an exception of no cause or right of action. The suit is for damages for an alleged breach of a contract on the part of the defendant to drill a well, to a specified depth, in search of oil or gas, on a 10-acre lease, owned jointly by the two parties to the contract.

The facts alleged in the plaintiff's petition, and shown by the written contract, which is made a part of the petition, are as follows: The plaintiff, Fite, owned an oil and gas lease on 20 acres of land, described as the E½ of NE¼ of SW¼ of Section 36, in T. 11 N., R. 11 W., in De Soto Parish. Fite transferred to the defendant, Miller, the lease in so far as it affected the 10 acres forming the northern half of the tract, and retained the lease in so far as it affected the 10 acres forming the southern half of the tract. Thereafter, on the same day, Fite and Miller entered into the contract, the alleged breach of which on the part of Miller is the cause of this lawsuit. By the terms of the contract, which is evidenced by a notarial act, Fite assigned to Miller a half-interest in the lease in so far as it affected the southern 10-acre tract. The consideration for the transfer was $1,000 paid by Miller in cash, and his obligation to drill a well on each one of the 10-acre tracts, to a specified depth, in search of oil or gas. It was stipulated that, as a part of the consideration for the transfer by Fite to Miller, of

the half-interest in the lease on the southern 10-acre tract, Miller bound and obligated himself to commence immediately the drilling of a well on the northern 10-acre tract,—on which Miller alone owned the lease,—and to continue the drilling of the well with due diligence to the depth specified,—and, within ten days after the completion of that well, to commence the drilling of a well on the southern 10-acre tract, —"a one-half interest in [the lease on] which is assigned to the said Miller by the terms of this instrument",—and to continue the drilling of that well with due diligence to the depth specified. It was stipulated that Miller should furnish all labor, material and equipment necessary for the drilling of the well, without cost to Fite, and that, if the well should be a producer of oil or gas in paying quantities, the well should be completed by Miller, with the necessary tubing, connections, flow lines, separators, tanks, etc., and that Miller should produce, save and deliver the oil or gas to the pipe line, all at his own cost and expense. It was stipulated that Miller should manage and operate the well to be drilled on the southern 10-acre tract, and any additional well or wells that might be drilled on that tract, and that the operating expenses should be borne equally by Fite and Miller. Provision was made for the rendering by Miller of monthly statements of the operating expenses, and for the payment by Fite of his half of the expenses. It was stipulated that, if the well to be drilled on the southern 10-acre tract should fail to produce oil or gas in paying quantities, the salvage from the well should belong to Miller; and that, if the well should pro-

duce oil or gas in paying quantities, Miller should receive, not only his half of the oil or gas, but also one-half of Fite's half of the oil or gas, until Miller should be paid $7,500; after which, the casing, tubing, tanks, etc., used in connection with the well, should belong jointly and equally to Fite and Miller; and that thereafter each of them should receive one-half of the oil or gas. It was stipulated that, if the well should be a producer of oil or gas, but should cease producing before three-fourths of the production should amount to enough to pay or reimburse Miller the $7,500, then all of the salvage from the well should belong to Miller. The other stipulations in the contract are not pertinent to the question whether the plaintiff, Fite, has a cause of action for damages for the alleged breach of the contract.

Miller promptly drilled the well on the northern 10-acre tract, to the depth specified, and abandoned the well as a dry hole, and then notified Fite that he, Miller, would not drill a well on the southern 10-acre tract. On the same day on which Miller abandoned the well as a dry hole Fite made a written demand upon Miller to commence the drilling of the well on the southern 10-acre tract within the ten days stipulated in the contract. Fite alleges that Miller, without just cause, adhered to his refusal to drill a well on the southern 10-acre tract.

The plaintiff, in his petition, calls attention to the fact that, by the terms of the contract, the obligation of the defendant, Miller, to drill a well on the southern 10-acre tract was unconditional, and not de-

pendent upon whether the well to be drilled on the northern 10-acre tract should be a producer or a dry hole. Inasmuch as Miller alone owned the lease on the northern 10-acre tract, Fite had no interest in Miller's drilling a well only on that tract, except that if the well had been a producer of oil or gas the result would have been to enhance the value of the lease on the southern 10-acre tract. On the other hand, it is very likely, if not obvious, that Miller's drilling and completing a dry hole on the northern 10-acre tract, and then arbitrarily refusing—if in fact he did arbitrarily refuse—to fulfill his obligation to drill a well also on the southern 10-acre tract, impaired the value of the lease on that tract, by lessening the prospect of finding oil or gas on that tract. As we interpret Fite's petition, he does not claim damages, specifically or especially, for the impairment of the value of his half-interest in the lease on the southern 10-acre tract, by Miller's drilling in a dry hole on the northern 10-acre tract. On the contrary, Fite avers that the drilling in of the dry hole on the northern 10-acre tract was not proof that a well drilled on the southern 10-acre tract would not have been a producer; hence Fite avers that the fact that the well which Miller drilled on the northern 10-acre tract was not a producer did not justify Miller's refusal to fulfill his obligation to drill a well also on the southern 10-acre tract. The contract speaks for itself in that respect.

Fite alleges that the average cost of drilling a well to the depth specified in the contract, in the territory of which this lease forms a part, is $14,000, and hence that

Miller, by entering into the contract, admitted that the lease on the southern 10-acre tract was worth $14,000, in addition to the $1,000 which Miller paid as a part of the consideration for the half-interest in the lease. Hence Fite avers that the extent of the damages which he sustained by Miller's refusal to drill a well on the southern 10-acre tract was $14,000,—being the amount which it would have cost to drill the well. Fite avers that, after he had signed the contract with Miller, another party, having no knowledge that any such contract had been made, offered $500 per acre for the lease, or $5,000 for the lease in so far as it affected the southern 10-acre tract; that the party making the offer was not only willing but able to comply; and hence that, if he, Fite, had not assigned the half-interest in the lease to Miller, "he could have sold said ten-acre lease for said sum." Hence, in the alternative, he prays for $5,000 damages. In a supplemental petition, Fite claims that, if he is not entitled to the $14,000 as damages, he is entitled to that amount as the unpaid part of the price for which he assigned the half-interest in the lease to Miller.

We agreed with counsel for Miller that Fite's alternative claim, that he could have sold the lease on the southern 10-acre tract to another party for $5,000 if he, Fite, had not assigned a half-interest in the lease to Miller, does not disclose a cause of action. A sufficient reason for this is that Fite does not allege that he would have accepted the offer of $5,000 for the lease on that 10-acre tract if he had not assigned a half-interest in the lease to Miller. Fite's allegation in that respect merely tends to

show that the lease on the southern 10-acre tract was worth only $5,000, and hence that a half-interest in the lease was worth only $2,500, before the assignment was made to Miller.

 We agree with counsel for Miller also in the argument that Fite's alternative claim of $14,000 as a part of the price for which he assigned to Miller the half-interest in the lease on the southern 10-acre tract is not well founded. Miller did not promise to pay Fite $14,000,—or the cost of drilling the well,—whatever the cost might have been,—as a part of the consideration for the half-interest in the lease on the southern 10-acre tract. Having paid the $1,000 cash, the only remaining obligation of Miller,—and the only one which he is said to have violated, —was to drill the well at his own expense on the southern 10-acre tract, for the joint benefit of himself and Fite. The only right of action that an obligee has against an obligor who has breached his contract to deliver something other than money, or to do something other than to pay a sum of money, is to sue for damages for the breach of the contract, or to sue for actual or specific performance of the contract if it be of such a nature that a court of justice can compel specific performance. A contract to drill a well in search of oil or gas is, in its very nature, one of which the courts have no means of compelling actual or specific performance. Hence the only remedy for a breach of such a contract is to sue for damages.

The judge of the district court did not give any written reason for sustaining the

exception of no cause or right of action. The attorneys for the defendant, however, concede that the only ground on which the judge ruled that the plaintiff had no cause or right of action was that the plaintiff did not allege, and could not allege, with any assurance, that if the defendant had drilled a well on the southern 10-acre tract it would have been a producer of oil or gas,—and hence that the plaintiff could not prove that he sustained a loss, or was deprived of a profit, by the defendant's failure to drill the well. The attorneys for the defendant do not contend that there is any reason why the exception of no cause or right of action should be sustained, unless it be the reason for which the judge of the district court sustained it; that is, that there is no assurance that the well would have been a producer if the defendant had drilled it, and hence that there is no way of proving that the plaintiff sustained a loss, or was deprived of a profit, by the failure or refusal of the defendant to drill the well.

The attorneys for the defendant cite, in support of their exception of no cause or right of action, article 1934 of the Civil Code, which provides:

"Where the object of the contract is any thing but the payment of money, the damages due to the creditor [obligee] for its breach are the amount of the loss he has sustained, and the profit of which he has been deprived," etc.

 The loss which Fite sustained in this instance was the loss of the chance or prospect which he would have had of being enriched if Miller had fulfilled his

contract. The mere chance or prospect of being enriched by the drilling of a well in search of oil or gas is, of itself, a thing of value; and hence an unconditional obligation on the part of a lessee to drill a well on the leased premises to a given depth and within a specified time. is a sufficient consideration for a valid contract of lease, or for a valid assignment by a lessee of an interest in his leasehold. It was so held in Glassell v. Richardson Oil Co., 150 La. 999, 91 So. 431, where the obligation of the lessee to drill certain wells was unconditional, and where the court distinguished the case from Raines v. Dunson, 145 La. 525, 82 So. 690, in which case there was no absolute obligation on the part of the lessee to drill a well, and in which case there was no other consideration paid or to be paid 'by the lessee, and hence the contract was unilateral, or affected by a potestative condition. In this case, where the obligation of Miller to drill the well to the depth specified, on the southern 10-acre tract, was an absolute and unconditional obligation, and where the carrying out of the obligation was paid for by Fite, it cannot be said that Miller was at liberty to violate his obligation with impunity, on the theory that to fulfill the obligation might not have been of any benefit to Fite.

To hold that one who enters into a contract to drill a well in search of oil or gas is not liable in damages for a breach of the contract, on the theory that the well might not have been a producer if the contractor had drilled it, is not consistent with article 2451 of the Civil Code, which declares that a sale of "an uncertain hope" is a valid contract, as, for example, when a fisherman "sells a haul of his net before he throws it"; in which case, "although he should catch nothing," the sale is valid, "because it was the hope that was sold, together with the right to have what might be caught." That article of the Civil Code is the basis for the jurisprudence, which has been adhered to consistently ever since the court decided the case of Frost-Johnson Lumber Co. v. Nabors Oil & Gas Co., 149 La. 100, 88 So. 723, in 1921,—to the effect that a contract purporting to be a grant of the oil and gas beneath the surface of the grantor's land is merely a grant of the uncertain hope of finding oil or gas there, with the right to become the owner of such oil or gas as may be found and reduced to possession. Such a contract is valid, even though oil or gas may never be found beneath the surface of the land; and in that event the grantor is not liable in warranty, or for a failure of consideration for what he received.

This court has not had occasion heretofore to decide a case exactly like this case; but, in other jurisdictions where the measure of damages for a breach of contract is the same as it is in article 1934 of the Civil Code of Louisiana, it has been decided that the measure of damages for the breach of a contract to drill a well, to a given depth, in search of oil or gas, is the amount which it would cost to have the well drilled, if the contractor has been paid to drill the well; and in such cases the party for whom the well was to be drilled is not obliged to drill the well,

or have it drilled, in order to determine the extent of the damage.

The case of Ardizonne v. Archer, 72 Okl. 70, 178 P. 263, 265, was a suit for damages for a breach of a contract on the part of the transferees of a leasehold, to drill a well, to a given depth, on an 80-acre tract of untested and unexplored land of the lessor. The defense was, as it is in this case, that the damages alleged could not be proved, and that the lessor should first drill the well and thereby determine the cost. The measure of damages for a breach of contract, in Oklahoma, is substantially the same as it is under article 1934 of the Civil Code of Louisiana. On that subject the Supreme Court of Oklahoma quoted section 2852 of the Revised Laws of Oklahoma, 23 Okl.St.Ann. § 21,—the concluding and pertinent sentence in which section reads:

"No damages can be recovered for a breach of contract, which are not clearly ascertainable in both their nature and origin."

The Supreme Court of Oklahoma decided that the lessor was entitled to recover, as damages, the amount that it would cost to drill the well to the depth specified; and, in so deciding, the court said:

"Can it be said that, inasmuch as the lessor has not drilled the well, he has suffered no detriment, and therefore he is only entitled to recover nominal damages? We do not think so. It might as well be argued that if A. contracts to build a house for B., and is paid for it and then fails to keep his agreement, B. can only recover nominal damages unless he, himself, has built the house A. was paid to build. In this case, the lessor granted to the lessee certain rights and privileges appertaining to his property, in consideration of which the lessee agreed, among other things, to drill the well in question. No one would question the right of B. to recover of A. the cost of building the house, and we see no reason why the plaintiffs in error may not properly be required to pay the lessor the cost of drilling the well. We are not impressed with the argument that the lessor has suffered no detriment, because it is not shown that, if the well had been drilled, oil or gas would have been discovered. The very purpose of drilling the test well was to ascertain whether oil or gas could be found. It does not lie with the plaintiffs in error, who engaged and were compensated for drilling the well, to say that their performance would not be beneficial to the lessor."

In the case of Covington Oil Co. v. Jones, Tex.Civ.App., 244 S.W. 287, 288, the obligation of the lessee, Covington Oil Co., was to drill a well in search of oil or gas, on a 40-acre tract of the lessor, Jones, to the depth of 2,000 feet unless oil or gas should be found in paying quantities at a less depth. The lessee drilled the well to the depth of 1,420, and declined to drill deeper, claiming that the geological formation found at that depth indicated that oil or gas was not to be expected. The lessor sued for damages for breach of the contract; and the Court of Civil Appeals of Texas affirmed a judgment

of the district court, allowing the plaintiff $3,000 damages, being the amount which it would cost, according to the testimony, to complete the drilling of the well to the depth of 2,000 feet. The court said:

"The contract in this case obligated the appellants to drill the well to a depth of 2,000 feet, unless oil or gas in paying quantities should be discovered at a lesser depth. The well was drilled to 1,420 feet, and the work abandoned by appellants on the theory that they did not believe oil would be discovered at 2,000 feet or less, and that it would be a waste of money to dig any deeper than the 1,420 feet. The jury found that [it] was possible to sink the well to the contractual depth, and that it would cost $3,000 to do so. It was immaterial whether the well completed to a depth of 2,000 feet might have been a dry hole or an oil gusher, and a matter about which appellants could not justify their refusal to complete. Appellee had fully paid the consideration for the digging of the well, and was entitled to have his contract performed, or to be paid the sum necessary to enable him to sink the well, and, having received the full consideration therefor, appellants were bound to fulfill their agreement, or to pay appellee the sum necessary to enable him to have the contract performed. Chamberlain v. Parker, 45 N.Y. 569; Taylor v. North Pacific Coast R. Co., 56 Cal. [317] 319; Henry Oil Co. v. Head (Tex.Civ.App.) 163 S.W. 311. The true measure of damages is that sum which will place the injured party as nearly as possible in the position he would have occupied if the defaulting party had performed the contract."

The case of All-American Oil & Gas Co. v. Connellee, 5 Cir., 3 F.2d 107, was very similar to the present case, in that it was a suit by an assignor against the assignee of an oil and gas lease, for damages for a breach of the contract, by the failure of the assignee to fulfill an obligation to drill a well in search of oil or gas, to the depth stipulated in the contract. The defendant, assignee of the lease, erected a derrick on the leased land, but failed to drill the well. The District Court of the United States for the Northern District of Texas allowed the plaintiff $19,500 damages, which the court declared was the reasonable cost of drilling the well, less the reasonable value of the salvage and of the derrick. The judgment was affirmed by the Circuit Court of Appeals, for the Fifth Circuit. The court said:

"By the contract the plaintiff acquired the right to have a well drilled by defendant on the leased land as stipulated. A result of defendant's failure to do what it contracted to do was to make it liable to the plaintiff for the amount of the reasonable cost of having that done which the defendant obligated itself to do. The plaintiff's right to recover the amount of the reasonable cost of that to which the contract entitled him was not dependent on his proving that the value of the lease, or of plaintiff's interest therein, would have been enhanced if defendant had drilled a well pursuant to the contract. Lawton v. Fitchburg Railroad Co., 8 Cush. (Mass.) 230, 54 Am.Dec. 753; Lee v. Harris, 85 Conn. 212, 82 A. 186; Ardizonne v. Archer, 72 Okl. 70, 178 P. 263; Covington Oil Co. v. Jones (Tex.Civ.App.) 244 S.W. 287."

The case of the Continental Oil Co. v. Fisher Oil Co., 10 Cir., 55 F.2d 14, 17, was a suit brought by an assignor against the assignee of an oil and gas lease, for damages for a breach of the contract, by the failure of the assignee to drill a well, within the time stipulated and to the depth stipulated, on a 40-acre tract included in the lease. The case was submitted on a stipulation of facts, in which it was admitted that the reasonable cost of drilling a well to the depth specified, in that year, with the necessary tanks included, if the well should be a producer, would have been $62,000, but that the reasonable cost of drilling and plugging the well if it should have been a dry hole, with the material and equipment removed as the property of the driller, if the well should be a dry hole, would have been $50,000. The United States District Court for the Northern District of Oklahoma gave judgment for the plaintiff for $50,000, and, on appeal, the Circuit Court of Appeals for the Tenth Circuit affirmed the judgment, and, in the course of the opinion, said:

"The cost of drilling a dry hole was stipulated [in the stipulation of facts on which the case was submitted] to be $50,000. This sum represented the measure of damages the plaintiff was entitled to recover, as it had a direct interest in the well. [Here the court cited All-American Oil & Gas Co. v. Connellee, 5 Cir., 3 F.2d 107, and Covington Oil Co. v. Jones, Tex.Civ.App., 244 S.W. 287, and other decisions]. There was no error in awarding that sum to the plaintiff.

"The additional demand of the plaintiff for $12,000 was properly denied, as it was necessarily based on the theory that oil would be found in the well. By section 5976, C.O.S.1921, 23 Okl.St.Ann. § 21, the measure of damages recoverable for breach of contract is the compensation for the detriment proximately caused thereby, or what in the ordinary course of things would be likely to result therefrom. But the plaintiff had the burden of proof to establish its damages, and before it could be entitled to the value of a paying well, it was bound to prove that the well would have been of that character. There was no evidence to that effect, assuming the fact was susceptible of competent proof. There was no showing for a recovery beyond the $50,000. A judgment for the additional claim of $12,000 was therefore properly refused."

In the case of the Pen-O-Tex Oil & Leasehold Co. v. Pittsburgh Western Oil Co., 66 F.2d 657, the Circuit Court of Appeals for the Third Circuit affirmed a judgment of the District Court of the United States for the Western District of Pennsylvania, maintaining that the amount of damages due to the promisee for the promisor's failure to drill an oil well was the cost of completing the work. In that case the plaintiff's demand was rejected because there was no evidence on which the damages could be assessed.

The case of Godwin v. Davidson et al., 163 La. 804, 112 So. 728, 730, was a suit on a bond for $5,000, given by Davidson, with the Aetna Casualty Company as surety, to guarantee that Davidson would perform a contract to drill a well in search of oil or gas on each one of eight 40-acre tracts on which Godwin had a lease. David-

son drilled three of the wells. The first well produced oil in paying quantities, but after being pumped for nearly a year the production petered out. Meanwhile Davidson drilled two more wells, both of which were failures, one producing salt water and the other being a dry hole. Having spent more than $125,000 in the drilling of the three wells, Davidson abandoned the work. He was not paid in advance for the work. We found that, as far as Davidson had performed his contract, he had done it faithfully and well, and hence that the suit to recover the stipulated damages or penalty of $5,000 was governed by article 1934, subdivision 5, and article 2127 of the Civil Code; which, in substance, declare that, if the parties to a contract stipulate the amount of damages or the penalty to be paid in case of a breach of the contract, the amount stipulated is the amount to be paid, no matter what the actual damages may be, but, if the party breaching the contract has performed it partly, his liability should not exceed the actual damages suffered by the other party, unless the contract provides that the stipulated damages or penalty shall be paid even for a partial breach of the contract. And we held that, as the plaintiff, Godwin, did not allege or prove that he had suffered any damages, but was suing only for the penalty, he was not entitled to recover. The implication, therefore, is that, if the plaintiff had alleged that he had suffered damages by reason of the defendant's partial breach of the contract, the damages might have been proved. In the course of the opinion we said:

"The only question in the case is whether the plaintiff is entitled to recover on the bond the $5,000 as liquidated damages for Davidson's failure to drill five more wells, one on each 40-acre tract, all to the depth and within the periods stated in the contract. Plaintiff did not allege or attempt to prove that he suffered any loss, or was deprived of any profit, by Davidson's failure to drill more than the three wells. Plaintiff's theory is that the bond was given as a penal clause to guarantee that Davidson would pay $5,000 as a penalty if he should fail, even partly, in the performance or completion of his contract.

\* \* \* \* \* \*

"Article 2127 is virtually a repetition of the last sentence in article 1934, subd. 5. Both articles provide that, even though a contract stipulates the penalty or damages that shall be paid if the contract be breached, nevertheless only the damages actually suffered ought to be allowed if the contract be breached after being partly executed. In this case the contract was partly executed—and executed well and faithfully as far as it was executed—and there is neither allegation nor proof that the plaintiff suffered any loss, or was deprived of any gain, by the defendant's failure to complete the execution of the contract."

The measure of damages for losses caused or for profits prevented by breach of a contract is the same at common law as it is expressed in article 1934 of the Civil Code of Louisiana. Goodloe & Co. v. Rogers, 10 La.Ann. 631; Restatement of the Law of Contracts, secs. 331–333, pp.

515–531; 17 C.J. p. 847, Sec. 168. And the rule is the same at common law, with regard to the sale of an uncertain hope, as it is expressed and illustrated in article 2451 of the Civil Code of Louisiana. On this subject, some very apt illustrations or examples are given in the Restatement of the Law of Contracts, Ch. 12, §§ 332, 333, pp. 523–531. One of these examples is the case where a company engaged in publishing a journal offered prizes in a subscription contest. One of the entrants in the contest had a good lead, and hence a favorable chance of winning the first prize, when the publishing company discontinued the contest. It was not possible for this entrant to show which prize he would have won, or whether he would have won any prize; but his chance of winning some one of the prizes was so good as to have a sale value. It was held that he had the right to recover damages from the publishing company, to be measured not by the value of any particular prize, but by the value of his contract right that his chance or opportunity to win a prize should not be destroyed. Another illustration given has reference to the value of a bet on a horse race, before the race is run. Another illustration is a case where an insurance company insures a house against loss by fire for the term of five years, and receives the premium for the full term, and thereafter repudiates the contract of insurance. It is held that the insured is entitled to a judgment against the insurer for the value of the contract right that is repudiated, although the house may never be burned, and that this value is measured by the cost of a new insurance

policy; and that the same judgment should be given even though the suit is brought after the expiration of the five-year term and the house has not been burned.

Our conclusion is that the plaintiff has a cause of action. The measure of damages is the value of the uncertain hope which the plaintiff had, in consequence of the assurance that a well would be drilled in search of oil or gas on the leasehold in which he retained a half-interest. We are not called upon now to lay down a formula for ascertaining the value of the uncertain hope which the plaintiff claims he was deprived of. The best criterion will be the amount that it would cost to drill the well to the depth specified. Perhaps allowance should be made for the fact that, if Miller had drilled the well, he would have had a half-interest in it; and perhaps allowance should be made also for the fact that, by the terms of the contract, Miller would have been entitled to retain one-half of Fite's half of the oil or gas, to the value of $2,500, if Miller had brought in a producer of oil or gas. These matters, of course, have not been passed upon by the judge of the district court. An appellate court does not decide questions which were not decided by, or contested in, the court from whose judgment the appeal is taken. Code of Prac. art. 895. We do not know what kind of evidence the plaintiff is depending upon, or whether it will be admissible, or sufficient to sustain his demand, either in whole or in part.

The judgment appealed from is reversed, the exception of no cause or right of action is overruled, and the case is ordered re-

manded to the district court for further proceedings consistent with the opinion which we have given. The costs of this appeal are to be borne by the appellee; as to all other court costs the question of liability is to abide the final disposition of the case.

PONDER and ROGERS, JJ., dissent.

PONDER, Justice (dissenting).

Insofar as it is held that the plaintiff has not alleged a cause of action in his alternative claims I agree with the majority opinion. However, I do not agree with the majority opinion in its holding that the plaintiff has set forth a cause of action in his claim for damages for the amount that it would cost to drill the well, or, in other words, the cost of performing the contract. While this court has not heretofore decided a case of this nature, yet this court has on numerous occasions interpreted the provisions of Article 1934 of the Revised Civil Code, under which the plaintiff is now seeking to recover. Under this article of the Civil Code I take it the loss contemplated is the loss actually sustained as a result of the breach of the contract, or in other words, the loss occasioned by the failure of the contract. This court has often referred to such damages as being in the nature of indemnity to indemnify the actual loss sustained. The decisions based on Article 1934 of the Revised Civil Code have invariably placed a strict construction upon its provisions. I do not believe that the plaintiff under

the provisions of Article 1934 of the Civil Code is entitled to recover beyond the loss he has sustained and the profits he has been deprived of. The plaintiff is not entitled to be placed in a better position than he would have been had the contract been kept. There is not a more apt illustration that the measure of damages under this Article of the Civil Code could not be the cost of performing the contract than the instant case. If the contract had been kept and the well had resulted in a dry hole the well would have been of no value. In such instance, if the contract had failed the plaintiff would have suffered no loss, while on the other hand, if the well had been successful and produced oil, there is no means by which you can determine how much oil it would have produced. I do not believe that the loss the plaintiff suffered is capable of proof. The result of this contract being of such an uncertain nature, the loss occasioned by its failure is incapable of proof. In order to determine the plaintiff's loss occasioned by the failure of the contract we would first have to ascertain the value of the completed contract. The value of the completed contract is incapable of proof, consequently the loss the plaintiff has suffered is incapable of proof.

It is true that this court in the case of Goodloe & Co. v. Rogers, 10 La.Ann. 631, in discussing the measure of damages under Article 1934 of the Civil Code, stated that the doctrine of the civil and common law is not materially different. In 17 Corpus Juris, under Damages, § 168, we find the rule stated:

"The measure of damages in the case of a breach of contract is the amount which will compensate the injured person for the loss which a fulfillment of the contract would have prevented or the breach of it has entailed. In other words, the person injured is, so far as it is possible to do so by a monetary award, to be placed in the position he would have been in had the contract been performed. But a plaintiff is not to be put in a better position by a recovery of damages for the breach of a contract than he would have been in if there had been performance."

We also find the rule stated in 15 American Jurisprudence, under Damages, § 43:

"In accordance with the general principle governing the allowance of damages, a party to a contract who is injured by its breach is entitled to compensation for the injury sustained and is entitled to be placed, in so far as this can be done by money, in the same position he would have occupied if the contract had been performed. Moreover, his recovery is limited to the loss he has actually suffered by reason of the breach; he is not entitled to be placed in a better position than he would have been in if the contract had not been broken."

We do not find any material difference in the general rule of the common law and that of Article 1934, Revised Civil Code. In either instance the plaintiff would not be entitled to be placed in a better position that he would have been had the

contract been kept. Under the common law doctrine of compensatory damages the loss suffered must be capable of proof and under Article 1934, R.C.C., the loss must be capable of proof before the plaintiff would be entitled to recover. In the case of Benjamin v. Hillard, 23 How. 149, 16 L.Ed. 518, in discussing the measure of damages for breach of contract the court stated:

"The amount that would have been received, if the contract had been kept, is the measure of damages if the contract is broken."

I do not believe that Article 2451, R.C.C., is applicable to the instant case. It is to be borne in mind that in the sale of an uncertain hope the parties themselves fix a price or value. While the hope is uncertain the value or price of it is certain for the reason that the parties themselves have fixed such price or value. I do not see how recovery could be had under the provisions of Article 1934, R.C.C., for an uncertain hope or for uncertain damages because the damages contemplated under the provisions of the Article must be capable of proof. If the plaintiff had, on the defendant's failure to complete the contract, gone ahead and drilled the well I believe he could have recovered the amount expended for the reason there would have been an actual loss which was capable of proof.

For the reasons assigned I respectfully dissent.