32

422 S.E.2d 509

**Robert H. WOOD, Attorney–In–Fact for Myra S. Wood, His Wife; Elizabeth M. Hodgin and C.E. Hodgin, Her Husband; John E. Thorpe and Vickie C. Thorpe, His Wife; Norbourne H. Thorpe, Single; Robert H. Wood, Jr. and Vivian R. Wood, His Wife; Robert H. Wood and Price Properties–Clay, a West Virginia Limited Partnership, Plaintiffs Below, Appellants,**

v.

**STERLING DRILLING AND PRODUCTION CO., INC. Defendant Below, Appellee.**

No. 20731.

Supreme Court of Appeals of West Virginia.

Submitted May 5, 1992.

Decided July 23, 1992.

Fred A. Jesser III, Jesser & Harrington, Fayetteville, for appellants.

Thomas N. McJunkin, Jackson & Kelly, Charleston, for appellee.

PER CURIAM:

This is an appeal by Robert H. Wood, et al., from an October 2, 1991, final order of the Circuit Court of Clay County which granted summary judgment in favor of the appellees in a suit involving an unconditional drilling clause in an oil and gas lease. The appellants seek reversal of the circuit court order and remand of this case. We disagree with the contentions of the appellants and affirm the decision of the circuit court.

I.

The appellants are owners of certain real property in Clay County, West Virginia. They entered into an oil and gas agreement with the appellee, Sterling Drilling and Pro-

duction Co., Inc., (hereinafter referred to as "Sterling Drilling") on October 10, 1984.[1] The appellants contend that Sterling Drilling made both written and oral promises to drill on their land. The drilling provision in the lease provided the following: "Lessee agrees to drill at least one well on tracts one and two within fourteen months of the date of this Lease, and three additional wells on or before the expiration of the two-year term set forth in this Lease."

The appellants contend that Sterling Drilling thereafter made repeated oral promises to drill on the property, but eventually notified the appellants that it would not drill due to economic developments in the industry. The appellants then requested, received, and recorded a formal written cancellation and forfeiture of the lease from Sterling Drilling. The appellants subsequently brought a declaratory judgment action seeking to either compel Sterling Drilling to drill as provided in the lease or to assess damages against Sterling Drilling in a sum determined to be the cost of drilling.

## II.

On November 1, 1989, Sterling Drilling filed a motion for summary judgment. During a pretrial hearing on July 1, 1991, the motion for summary judgment was addressed, and the lower court orally granted that motion. The final order of the lower court granting summary judgment was entered by the Circuit Court of Clay County on October 2, 1991. It is from that order that the appellants have appealed. While the appellants contend that the trial court erred in granting summary judgment in favor of Sterling Drilling, Sterling Drilling contends that the forfeiture and cancellation of the lease relieved Sterling Drilling of further responsibility or monetary damages under the lease. The lease specifically stated that the rentals due under the lease constituted full and adequate consideration, and Sterling Drilling paid all rentals due under the terms of the lease. Those rentals were consideration for the lease and kept the lease alive during its term. Upon forfeiture and cancellation, Sterling contends neither party had further responsibility to the other. Sterling Drilling therefore maintains that the lower court's grant of summary judgment was appropriate, in light of the fact that only the legal implications of the contract were contested and no facts were in dispute.

The appellants, however, contend that they are entitled to damages equal to the cost of drilling a well. They cite *Fite v. Miller*, 192 La. 229, 187 So. 650 (1939) for their position. In *Fite*, the court held that where a drilling provision in a lease is unconditional and the lessee fails to comply with the provisions, the lessor is entitled to damages equal to the cost of drilling a well. 187 So. at 657. *Fite* is distinguishable from the present case in two key respects: first, the consideration for the contract in *Fite* was specifically the drilling of the well. "It was stipulated that, as a part of the consideration ... Miller bound and obligated himself to commence immediately the drilling of a well...." *Id.* 187 So. at 651. Moreover, the *Fite* case did not deal with the intervening element of forfeiture or cancellation. In the present case, an agent for the appellants, Robert H. Wood, requested a formal surrender of the lease and acknowledged a prior forfeiture of the lease by letter dated November 4, 1987. Specifically, in that letter, Mr. Wood stated:

> Our situation should have worked out better, but it certainly was not your fault.
>
> ... Although Sterling forfeited our lease through non-compliance I do not believe a formal surrender was ever prepared and recorded. We would appreciate it very much if Sterling would do this and sned [sic] us a copy.
>
> I hope Sterling has weathered the tough times of the past two years and that things are getting back on track now.

Pursuant to Mr. Wood's request, Sterling Drilling executed a Release and Lease Surrender Statement on February 13, 1988, which was duly recorded. Furthermore, although the original lease contained no

---

1. The lease had a primary term of two years, and it provided for rental payments of five dollars per acre per year. In accordance with those provisions, Sterling Drilling paid the appellants over $11,000 in rentals during that primary term.

express mention of monetary remedies in the event of nonproduction, the amended version provided for forfeiture of tracts which had not been liquidated during a specified time period.[2]

We have consistently maintained that a contractual agreement, to retain its intended meaning, must be read in its entirety.

As with other contracts, the language of a lease agreement must be considered and construed as a whole, giving effect, if possible, to all parts of the instrument. Accordingly, specific words or clauses of an agreement are not to be treated as meaningless, or to be discarded, if any reasonable meaning can be given them consistent with the whole contract.

Syl.Pt. 3, *Moore v. Johnson Serv. Co.*, 158 W.Va. 808, 219 S.E.2d 315 (1975).

When the lease at issue is considered in its entirety, giving meaning to all clauses in the lease, it becomes apparent that the parties agreed in their original October 10, 1984, lease that the appellants would lease approximately 1,250 acres, situated on six tracts, to Sterling Drilling. Sterling Drilling paid a rental fee of five dollars per acre to the appellants. Paragraph sixteen of the lease provided as follows: "The consideration paid for this Lease and/or any rentals and/or royalties or shut-in royalties paid by Lessee hereunder is accepted by Lessor as full and adequate consideration for all rights, options and privileges herein granted." Sterling Drilling further agreed in paragraph nineteen "to maximize the drilling potential in the Lease as economically feasible...." The October 6, 1985, amendment specified the drilling agreement and further stated, as referenced above, that by October 10, 1991, "any and all tracts not liquidated by the drilling of a well shall be forfeit [sic] and said Lease shall become null and void as to the unliquidated tracts only."

Thus, upon a reading of the entire document, the intent of the parties regarding the desire to forfeit the unliquidated tracts is apparent. More importantly, however, the appellants in their subsequent discussions indicated a desire for forfeiture of the entire contract, and such forfeiture and formal surrender were agreed upon by the parties. Upon the forfeiture and surrender, the lease became a legal nullity. The parties to this lease actually consented to surrender, and the surrendered contract thereafter bound no one.[3] Perhaps this action could properly have been maintained if the appellants had sued upon the contract after learning of Sterling Drilling's final decision not to drill.[4] By surrendering the contract, however, the parties extinguished the contract and concomitantly relinquished the rights of the lessor to demand drilling.

As asserted by Sterling Drilling, the appellants, having extinguished the lease by forfeiture, cannot now resuscitate that agreement for their own gain anymore than Sterling Drilling could now attempt to drill and take gas under that forfeited lease. With regard to this type of situation, the following is explained in 5 Howard

---

2. Amendment paragraphs four and five provide as follows:

4. At the end of a period of five years from the expiration date of said Lease (being two years from the 10th day of October, 1984, or the 10th day of October, 1991), any and all tracts not liquidated by the drilling of a well shall be forefeit [sic] and said Lease shall become null and void as to the unliquidated tracts only....

5. At the end of the two year term as stated in said Lease, any tract which has not been liquidated by the drilling of a well or wells shall require a delay rental payment to hold such an unliquidated tract or tracts for an additional year....

3. We do not mean to imply that any of the lessee's accrued obligations, such as past-due rentals or other monetary obligations accrued during the term of the lease, could be extinguished. We decline to enforce, however, any duty to drill under the surrendered contract.

4. Parenthetically, we note that even if an action for damages had been properly brought, this Court has specifically recognized the inappropriateness of damages as a remedy for failure to drill. In *Grass v. Big Creek Development Co.*, 75 W.Va. 719, 84 S.E. 750 (1915), we observed that even where a lessee had failed to drill a well, the lessor's oil was still in the ground. Furthermore, we noted that if the reserves were later produced, the lessor would receive proceeds on those reserves and would thereby "receive twice the sum fixed by the contract as compensation for right of exploration on their land." *Grass,* at 731, 84 S.E. at 754.

R. Williams and Charles J. Myers, *Oil and Gas Law* § 884.3 at 573 (1991):

> If ... [the lessor] disavows the contract, he may forfeit the lease; if he stands on the contract and allows the lessee to keep the leasehold, he may recover damages; but he cannot do both. This position is consonant with the general rule that a deed containing both a covenant and a condition subsequent on the same subject matter gives the covenantee alternative, not cumulative, remedies for the enforcement of the duty.

In the present case, the appellants requested, received, and recorded a formal surrender of the lease. Because that forfeited lease no longer exists, the appellant's claim is untenable. In syllabus point 4 of *Aetna Casualty & Surety Co. v. Federal Insurance Co.*, 148 W.Va. 160, 133 S.E.2d 770 (1963), we stated the following: "If there is no genuine issue as to any material fact summary judgment should be granted but such judgment must be denied if there is a genuine issue as to a material fact." We believe that the lower court was correct in concluding that no genuine issue of material fact existed. Based upon the foregoing, the decision of the Circuit Court of Clay County is affirmed.

Affirmed.