### COCKBURN v. O'MEARA.

#### No. 10783.

Circuit Court of Appeals, Fifth Circuit.

March 29, 1944.

As Amended April 27, 1944.

Rehearing Denied April 28, 1944.

Jesse L. Webb, Bernard A. Golding, and Leslie Moses, all of Houston, Tex., for appellant.

Clement M. Moss, of Lake Charles, La., and Jack Blalock and Clarence Lohman, both of Houston, Tex., for appellee.

Before HUTCHESON, HOLMES, and LEE, Circuit Judges.

LEE, Circuit Judge.

This suit was brought by James F. O'Meara, a citizen of Cook County, Illinois, against H. C. Cockburn, a citizen of Harris County, Texas, for damages arising out of an alleged breach of contract to drill a well on land in Avoyelles Parish, Louisiana.

The contract was made, executed, and delivered in Houston, Texas, and provided that O'Meara, as owner of certain oil and gas leases covering lands in Avoyelles Parish, Louisiana, in consideration of the sum of $1 and the further consideration stated, "does hereby bargain, sell, transfer, assign, and convey all rights, title and interest * * * in and to said leases and rights thereunder, to H. C. Cockburn, a resident of Harris County, Texas, * * * subject to the following reservations and conditions":

1. Assignor reserved to himself an overriding royalty of one-eighth (1/8) of all the oil, gas, and other minerals pro-duced from the leases until the receipts amounted to $23,000.00, and thereafter an overriding royalty of one-sixteenth (1/16).

2. Assignee agreed to commence the actual drilling of a well on said property in search of oil and gas, not later than twelve o'clock midnight, April 25, 1940, and to prosecute such drilling with reasonable diligence until a depth was reached equal to the depth of the producing horizons of wells already completed on adjoining acreage unless oil or gas was found in paying quantities at a lesser depth.

3. If for any reason actual drilling of a well was not begun before midnight, April 25, 1940, then assignee should immediately forfeit all of his rights, title, and interest in the assignment, or in any way incident thereto, unless such failure was due to order of court or to order of the Louisiana Department of Conservation.

The obligation to commence actual drilling on or before midnight, April 25, 1940, was conditioned upon:

A. Assignor securing from Frank T. Turner a ratification of the lease granted by him;

B. Assignor securing from the Department of Conservation, before April 11, 1940, an extension of permit to drill on the property covered by the leases, which permit had been previously granted to O'Meara Brothers; and

C. Assignor securing a valid order from the Department of Conservation transferring to appellant the permit so extended.

By letter simultaneously executed, it was agreed that said contract of assignment could be assigned by assignee to the H. & F. Oil Company, and that in the event assignor failed to secure the drilling permit or the ratification which he had obligated himself to procure, his liability would cease and the obligation of all parties concerned would thereupon terminate.

James F. O'Meara in his petition, in substance, alleged that H. C. Cockburn had failed and refused to commence and to drill said well as required by the contract; that said contract was to be performed entirely in Louisiana, and that the contract, its breach, and the measure of damages therefor, should be determined by the law of Louisiana; that under the law of that State, petitioner was entitled to recover damages in the sum of $93,950:

1. $60,000.00—The reasonable cost of drilling said well;

2. $33,950.00—The value of the overriding royalty reserved in said contract.

He prayed for judgment in said amount, with legal interest at the rate of 5% per annum from April 25, 1940, and costs.

The case was tried to the court without a jury and resulted in a judgment in favor of the plaintiff, O'Meara, in the sum of $35,000. Cockburn prosecutes this appeal.

In this court, appellant relies for reversal on the following points:

1. The cause was not decided consistently with the law of Texas.

2. The measure of damages applied was contrary to the settled jurisprudence of Texas.

3. The judgment of the court awarding damages was based on evidence of one witness.

4. The documentary evidence revealed that appellee had no title to the leases he assigned.

5. The contract providing for immediate forfeiture in the event appellant failed to begin drilling a well before April 25, 1940, without imposing any other penalty for failure to drill, was potestative and unenforceable.

6. The assignment lacked mutuality and conveyed no title and was without consideration.

7. The weight of factual and circumstantial parole and documentary evidence established that performance had been waived by appellee, and the contract had been abandoned.

8. The weight of the parole evidence, as well as the documentary evidence, supported the conclusion that appellee had failed to perform conditions assumed by him under the contract.

9. The documentary evidence established that it was impossible for appellant to perform.

10. The weight of the documentary evidence showed that appellant had been induced to enter the contract through misrepresentation and fraud.

11. The evidence established that appellee led and induced appellant to act as he did and put him in a position where he could not protect himself; therefore, appellee was estopped to prosecute this action.

12. The finding and conclusion of the Court below that the assignment was delivered was unsupported by and against the overwhelming weight of evidence.

█ Points 3, 4, 7, 8, 9, 10, 11, and 12 involve questions of fact on which the findings of the court below are adverse to appellant. As these findings are supported by substantial evidence, we may not disturb them.[1] We shall confine ourselves, therefore, to a consideration of points 1, 2, 5, and 6, and shall consider them in the order named.

### Points 1 and 2

In awarding judgment to appellee, the court below held that the law of Louisiana was applicable and measured the damages (1) by the cost of drilling the well and (2) by the profit which would have been realized from the overriding royalty had the well been drilled. Appellant contends (1) that in so doing the court did not decide consistently with the law of Texas, as required in Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, and Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477, and (2) that the measure of damages applied was contrary to the jurisprudence of Texas.

█ Erie R. Co. v. Tompkins makes it the duty of federal courts to apply the law of the state, "except in matters governed by the Federal Constitution or by acts of Congress." [304 U.S. 64, 58 S.Ct. 822, 82 L.Ed. 1188, 114 A.L.R. 1487]. Klaxon Co. v. Stentor Electric Mfg. Co. extended and applied the doctrine to the realm of Conflict of Laws. In the Stentor case, the Supreme Court said [313 U.S. 487, 61 S.Ct. 1021, 85 L.Ed. 1477]:

"We are of the opinion that the prohibition declared in Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, against such independent determinations by the federal courts extends to the field of conflict of laws. The conflict of laws rules to be applied in the federal court in Delaware must conform to those prevailing in Delaware's state courts."

█ Since, under these authorities, this case must be decided in accordance with the law of Texas pertaining to Con-

---

[1] 52(a) Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

flict of Laws, it becomes necessary to determine whether, under the Texas rule in such case, the contract is governed by the law of the state where it was made, or by that of the state where it is to be performed.

In Ryan & Co. v. Missouri, K. & T. R. Co., 65 Tex. 13, at page 16, 57 Am.Rep. 589, Chief Justice Willie said:

"It is admitted law that when a contract is to be wholly performed within a state, the laws of that state must furnish the rule as to its validity. The parties have their attention drawn to the law of the state in which alone the contract can be broken and liability incurred, and it must be presumed that they intended that their rights and obligations should be determined by the laws prescribed by that state upon the subject."

In J. R. Watkins Co. v. McMullan, Tex. Civ.App., 6 S.W.2d 823, 824, the Court said:

"It is immaterial, we think, that the contract sued upon was valid in Minnesota. It was performable in Oklahoma, and the general rule is that, unless a contrary intention of the parties appears, the validity of the contract is determined by the laws of the state where it is to be performed, and not by those of the state in which it was entered into. Fidelity Mut. Life Ass'n v. Harris, 94 Tex. 25, 57 S.W. 635, 86 Am.St.Rep. 813; Hall v. Cordell, 142 U. S. 116, 12 S.Ct. 154, 35 L.Ed. 956; 12 C. J. 450; 5 R.C.L. § 26, p. 936. Thus the validity of the contract in question is to be tested by the laws of Oklahoma and not those of Minnesota."

See also Byers et al. v. Brannon, Tex. Civ.App., 30 S.W. 492, error refused; Shreck v. Shreck, 32 Tex. 578, 588, 5 Am.Rep. 251.

Appellant next contends that the award of damages in accordance with the rule prevailing in Louisiana, when that rule was contrary to the Texas rule, was in violation of the public policy of the State of Texas. In 10 Tex.Jur. 190, the rule is stated:

"The public policy of the state is the law of the state as evidenced by and deduced from its Constitution, statutes and judicial decisions. The term presupposes the existence of a valid contract, and, by its very meaning, relates to the interest of others than the parties.

"Generally speaking, a contract which is not in itself immoral or in contravention of any law is not contrary to public policy. * * *

"Public policy permits utmost freedom of contract between parties of full age and competent understanding and requires that their contracts, when freely and voluntarily entered into, shall be held sacred and enforced by the courts, and this freedom should not lightly be interfered with by holding that a contract is contrary to public policy."

See also Miller v. Roberts, 18 Tex. 16, 67 Am.Dec. 688.

Appellant further contends that the question of damages relates to the remedy, and therefore is to be resolved by Texas law. In 9 Tex.Jur. 368, we find:

"A question as to damages pertains to the right and not to the remedy, and so is not governed by the law of the forum. This is the rule whether the question is one of tort or of contract."

In Thomas v. Western Union Telegraph Co., 25 Tex.Civ.App. 398, 61 S.W. 501, 502, writ of error refused, it was said:

"The damages to be allowed, as fixed or limited by such law, pertain to the right, and not to the remedy. This affects both the cause of action and the liability of defendants. This rule cannot, for any reason that we can conceive, be different in cases of contracts and torts."

In 11 Tex.Jur. Sec. 134, at page 425, this statement is made:

"The measure of damages for breach of a contract is, by the greatest weight of authority, regarded as a matter pertaining to the substantive rights of the parties rather than the remedy, and, therefore, this question is governed by the proper law of the contract, and not by the lex fori."

We conclude, as did the court below, that under the law of Texas pertaining to Conflict of Laws, the law to be applied in this case is the law of the State of Louisiana where the contract was to be wholly performed, and that the measure of damages for the breach of the contract is likewise governed by the law of that State.

We do not agree, however, with the court below, that an element in measuring the damages here is the reasonable cost of drilling the well. The court below, in awarding, as an element of damages, the reasonable cost of the well, applied

and followed the rule laid down by the Supreme Court of Louisiana in the case of Fite v. Miller, 192 La. 229, 187 So. 650, 122 A.L.R. 446; Id., 196 La. 876, 200 So. 285. We agree with appellant that the Fite-Miller case is not applicable. In that case there was an unconditional obligation on the part of Miller to drill a well, the consideration for which was paid by Fite in advance. This is made clear by the Supreme Court of Louisiana in the case as reported in 192 La. 229, 187 So. 650, 653, 122 A.L.R. 446. The Court there said:

"In this case, where the obligation of Miller to drill the well * * * was an absolute and unconditional obligation, and where the carrying out of the obligation was paid for by Fite, it cannot be said that Miller was at liberty to violate his obligation with impunity, * * *."

Again:

"This Court has not had occasion heretofore to decide a case exactly like this case; but, in other jurisdictions where the measure of damages for a breach of contract is the same as it is in article 1934 of the Civil Code of Louisiana, it has been decided that the measure of damages for the breach of a contract to drill a well, to a given depth, in search of oil or gas, is the amount which it would cost to have the well drilled, if the contractor has been paid to drill the well; * * *."

In the case at bar,—upon the appellee securing a ratification from Frank T. Turner of the lease granted by him, and securing an extension of the permit to drill theretofore granted to O'Meara Bros., and an order transferring to appellant the permit thus extended,—appellant became obligated to commence the drilling of a well before midnight, April 25, 1940, and to proceed with the drilling of said well with reasonable diligence until a depth was reached equal to the depth of the producing horizons of wells already completed on adjoining acreage. If the contract had stopped there, the case of Fite v. Miller would be applicable, but the contract also provided:

"If for any reason whatsoever the actual drilling (spudding in) of a well in search of oil or gas, has not been commenced by 12 o'clock midnight on April 25, 1940, then and in that event, the assignee hereunder immediately forfeits all of his rights, title and interest in this assignment or in any way incident thereto * * *."

Appellant, by not doing what he covenanted to do within the time stipulated, breached the contract. Had there been no forfeiture clause, then appellee, upon the breach of the contract, would have been entitled to damages or to specific performance[2] or to the dissolution of the contract.[3]

This was the situation in the Fite-Miller case: Fite elected to sue for damages. His election left Miller with title to the property which Fite had previously conveyed to him. Had Fite sued for dissolution of the contract and for such damages as he had actually sustained,[4] the cost of drilling the well would not have been considered. The fact that Fite did not seek to divest Miller of title to the property conveyed to Miller as the consideration for the well was the basis for awarding damages based upon the cost of drilling the well. In the case at bar, the parties expressly stipulated that the failure of appellant to commence a well before midnight of April 25, 1940, would result in immediate forfeiture by appellant "of his rights, title and interest in this assignment, or in any way incident thereto." Upon appellant's default, appellee elected to sue appellant for the cost of drilling the well and for the value of the overriding royalty, but was met with the defense that the parties themselves in case of breach had by the forfeiture clause limited the remedy, and that appellee could not recover beyond such stipulation. The court below found, and the fact is not disputed, that the condition effecting the forfeiture was present, in that appellant failed to begin the well within the time specified; it follows that appellant thereby forfeited all of his rights, title, and interest in the leases assigned and that title thereto in accordance with the contract reverted to appellee.[4a] Appellee may not in

---

[2] Specific performance is not favored; it is only when no adequate compensation can be made in damages, the courts in Louisiana may decree a specific performance of a contract. City of New Orleans v. New Orleans & N. E. R. Co., 44 La.Ann. 64, 10 So. 401; Mirandona v. Burg, 49 La.Ann. 656, 21 So. 723.

[3] Art. 1926 of the Revised Civil Code of Louisiana.

[4] Art. 2046 of the Revised Civil Code of Louisiana.

[4a] Braswell et al. v. Columbia County Development Co. et al., 153 La. 691, 694, 96 So. 534; Baird v. Atlas Oil Co., 146 La. 1091, 1101, 84 So. 366, 370; Fogle

such circumstances recover the cost of drilling the well. There remains, therefore, to appellee only the right to recover such actual damages as he may have suffered.

The court below found that the overriding royalty reserved by appellee had a cash value at the time of the breach of $20,000, and that it would have paid over its life approximately $33,000. The court below awarded appellee damages in the sum of $35,000, a sum in excess of the maximum amount which appellee would have recovered had a commercial well been actually drilled and completed. In addition to the award of $35,000, appellee has been revested with title to the leases under the express stipulation of the assignment. We have, therefore, a case where the appellee has been allowed to keep his cake and eat it too.

■ It was provided in the assignment that, if after drilling operations were commenced, the operations were restrained or stopped by order of court or by order of the Louisiana Department of Conservation, appellant might relieve himself of all liability by reassigning said leases to appellee. This, we think, clearly indicates that appellant would be relieved of liability only when performance was prevented by court order or order of the Louisiana Department of Conservation. It does not suggest that appellant would be relieved of liability where he arbitrarily failed to commence actual drilling within the time stipulated, nor does it suggest that in such case, the only penalty contemplated by the parties was forfeiture of appellant's rights under the assignment. We think the more reasonable interpretation consonant with the intention of the parties is that upon a breach of the obligation to commence the well as provided in the contract, appellant should immediately forfeit all rights under the assignment, and be liable to appellee for such damages as appellee otherwise had sustained. No proof to establish actual damages was offered. Appellee should be afforded an opportunity to offer such proof upon remand.

### Points 5 and 6.

■ Appellant contends that the assignment was without consideration, lacked mutuality, was potestative in character, and conveyed no title. This contention is predicated upon the claim (1) that the recited consideration was $1 cash, and (2) that the drilling of a well was subject to a potestative condition under Louisiana law. In Louisiana the price of a sale must be serious, and the $1 consideration recited in the assignment, does not constitute a serious consideration.[5] The real consideration, however, was the obligation to drill a well, and, under Louisiana law, was sufficient.[6]

■ A potestative condition is defined by the Louisiana Civil Code as follows:

Article 2024: "The potestative condition is that which makes the execution of the agreement depend on an event which it is in the power of the one or the other of the contracting parties to bring about or to hinder."

Article 2034: "Every obligation is null, that has been contracted, on a potestative condition, on the part of him who binds himself."

These articles, interpreted in connection with the other articles of the Civil Code, have been held by the Louisiana courts to mean that the potestative condition which makes the execution of an agreement dependent on an event in the power of one or the other of contracting parties to bring about or hinder, has reference to the obligor and not to the obligee; that in case of the obligor this power must be one which may be exercised by him without cost, and that where liability for failure to perform is incurred by the obligor, then the contract is not subject to the potestative condition.[7] One writer has suggested that Article 2034 should be re-enacted so as to convey its real meaning, and suggests the following wording:

"Every obligation is null which has been contracted subject to a purely potestative condition on the part of the obligor, that is, a condition which may be fulfilled by the simple exercise of the obligor's will, and nothing more."

■ In the present case, as we have indicated, the forfeiture by appellant of all of his rights, title, and interest in the assignment, or in any way incident thereto, is not the only penalty for his breach

---

v. Feazel, 201 La. 899, 10 So.2d 695, 698.

[5] Murray v. Barnhart, 117 La. 1023, 42 So. 489.

[6] Glassell v. Richardson Oil Co., 150 La. 999, 91 So. 431.

[7] Colbert v. District Grand Lodge No. 21, etc., La.App., 178 So. 694.

of the contract; that, in addition, he is liable for such damages as appellee may otherwise have sustained. In such circumstances, the potestative condition spoken of in the Louisiana Civil Code is absent.

Reversed and remanded.