## COCKBURN v. O'MEARA.

## O'MEARA v. COCKBURN.

### No. 11515.

Circuit Court of Appeals, Fifth Circuit.
April 30, 1946.

Rehearing Denied June 1, 1946.

Leslie Moses and J. L. Webb, both of Houston, Tex., for H. C. Cockburn.

Clement M. Moss, of Lake Charles, La., and Clarence Lohman, of Houston, Tex., for James F. O'Meara.

Before HOLMES, McCORD, and LEE, Circuit Judges.

LEE, Circuit Judge.

This is the second appeal in this case. The facts and the issues on the first appeal are fully reported in 141 F.2d 779, and only a brief review of them is now necessary.

James F. O'Meara, a citizen of Cook County, Illinois, assigned to H. C. Cockburn, a citizen of Harris County, Texas, certain oil and gas leases covering one acre of land in Avoyelles Parish, Louisiana, on April 6, 1940, for the consideration of $1 and the drilling of a well for oil or gas. Cockburn agreed to commence the actual drilling of the well not later than the 25th day of April, 1940, and to proceed with the drilling either until the drilling reached the depth of producing horizons of wells already completed on adjoining acreage or until the drilling reached oil or gas in paying quantities. O'Meara reserved an overriding royalty of one-eighth of all the oil, gas, and other minerals produced and saved until he should receive $23,000 from the sale thereof and thereafter an overriding royalty of one-sixteenth. The assignment further provided that, if Cockburn did not commence the well by midnight on April 25, 1940, he would immediately forfeit all his rights, title, and interest in the assignment or "in any way incident thereto." Cockburn failed to commence the drilling by the 25th day of April, and O'Meara sued him for damages (1) for the reasonable cost of drilling the well and (2) for the value of the overriding royalty reserved by O'Meara. After trial without a jury the court awarded O'Meara $35,000, the reasonable cost of drilling the well. We, reversing that judgment, said:

"* * * In the case at bar, the parties expressly stipulated that the failure of appellant to commence a well before midnight of April 25, 1940, would result in immediate forfeiture by appellant 'of his rights, title and interest in this assignment, or in any way incident thereto.' Upon appellant's default, appellee elected to sue appellant for the cost of drilling the well and for the value of the overriding royalty, but was met with the defense that the parties themselves in case of breach had by the forfeiture clause limited the remedy, and that appellee could not recover beyond such stipulation. The court below found, and the fact is not disputed, that the condition effecting the forfeiture was present, in that

appellant failed to begin the well within the time specified; it follows that appellant thereby forfeited all of his rights, title, and interest in the leases assigned and that title thereto in accordance with the contract reverted to appellee. Appellee may not in such circumstances recover the cost of drilling the well. There remains, therefore, to appellee only the right to recover such actual damages as he may have suffered."

On remand the plaintiff in an amended complaint claimed that the leases became valueless by reason of defendant's failure to drill by October 25, 1940, and itemized his damages as follows:

(1) $1,500—The loss of the cash consideration paid for said leases, sustained on defendant's breach.

(2) $33,580—The value of the overriding royalty reserved, the profit of which plaintiff was deprived by defendant's breach, or, in the alternative, the said sum as the additional loss sustained by the breach.

After a trial without a jury the court found: (1) That, if defendant had complied with his promise to drill, plaintiff would have received during the life of the well approximately $33,000 or plaintiff could have sold the royalties at the completion of the well for approximately $20,000; (2) that, as the purchase price for the leases, plaintiff had paid $1200; (3) that defendant's failure to drill a well caused the expiration of some of the reverting leases on April 25, 1940, and that a failure to drill a well caused the expiration of the other reverting leases on December 31, 1940; (4) that the defendant's failure to drill a well caused the expiration of all the leases and thereby deprived plaintiff of their value; and (5) plaintiff's loss amounted to $5,000, the reasonable market value of the leases in April, 1940, prior to their expiration.

Upon these findings of fact, the court, as a matter of law, concluded:

"I conclude that the rule thus announced [referring to the opinion of this court in 141 F.2d 779, 783] is that having gotten back his leases, Plaintiff may recover only such *actual damages* as he has sustained, and that neither the cost of drilling the well nor the value of overriding royalty had a well been drilled and produced oil, constitutes *actual damages*.

"Plaintiff claims that by reason of defendant's failure to drill the well, his leases have expired and become valueless and that his actual damages are the value of such leases. I conclude he is entitled to recover the value of the leases heretofore found.

"Judgment for Plaintiff for $5,000."

We held on the original appeal that plaintiff could not recover the cost of drilling a well because plaintiff could not have both the leases and the cost of drilling, the consideration by the terms of the assignment for the assignment of the leases.* We did not hold that plaintiff as an element of his "actual damages" could not recover for the loss of the value of the overriding royalty. On the first appeal the record did not reveal that the failure of defendant to drill a well rendered the leases valueless on reversion. The various co-owners of the one-acre tract executed the original leases to the plaintiff. Co-owners of an undivided five-sixteenths interest extended their original leases to December 31, 1940. Co-owners of an undivided seven-sixteenths interest merely ratified their original leases. The record on this appeal shows that the consideration for the ratifications and the consideration for the extensions were promises to begin a well upon the one-acre tract no later than April 25, 1940. Since no one commenced the drilling by April 25, 1940, the consideration failed, and the extensions and ratifications became valueless.

After the plaintiff assigned the leases to the defendant, the reserved overriding royalty represented both the value of the leases

---

* In Louisiana the obligation to pay an overriding royalty in a transfer of a lease, even though the transaction be called an assignment or sale of the lease, characterizes the transaction as a *sublease*. The payment of an overriding royalty is the payment of rent and is *not the payment of the price* for the oil or gas rights *as if they were sold*. Roberson v. Pioneer Gas Co., 173 La. 313, 317, 137 So. 46, 82 A.L.R. 1264.

and the plaintiff's profit on the assignment. The court below has found that the value of the leases was $5,000 and that upon completion of a well the plaintiff could have sold his overriding royalties for $20,000. Therefore, the $20,000 represented the value of the leases, $5,000, and plaintiff's profit on the assignment, $15,000. Since the leases upon the default of the defendant on his drilling obligation became valueless to the plaintiff, he lost both the value of the leases, $5,000, and his profit on the assignment, $15,000, represented in the value of the overriding royalty.

Article 1934 of the Civil Code of Louisiana, in part, provides:

"Where the object of the contract is any thing but the payment of money, the damages due to the creditor for its breach are the amount of the loss he has sustained, and the profit of which he has been deprived, under the following exceptions and modifications:

"1. When the debtor has been guilty of no fraud or bad faith, he is liable only for such damages as were contemplated, or may reasonably be supposed to have entered into the contemplation of the parties at the time of the contract. By bad faith in this and the next rule, is not meant the mere breach of faith in not complying with the contract, but a designed breach of it from some motive of interest or ill will.

"2. When the inexecution of the contract has proceeded from fraud or bad faith, the debtor shall not only be liable to such damages as were, or might have been foreseen at the time of making the contract, but also to such as are the immediate and direct consequences of the breach of that contract; but even when there is fraud, the damages can not exceed this."

Under the interpretation given to Article 1934 by the appellate courts of Louisiana, the promisee of a broken contractual promise to do anything else than pay money is entitled to recover not only the loss sustained but also the profits foregone. See Vidalat v. City of New Orleans, 43 La.Ann. 1121, 10 So. 175; New Iberia Sugar Co., Ltd. v. Lagarde, 130 La. 387, 58 So. 16; Usrey Lumber Co. v. Huie-Hodge Lumber Co., Ltd., 135 La. 511, 65 So. 627; Delarosa v. Misuruca, et al., 172 La. 190, 133 So. 441; and Ratcliff v. Levin, 175 La. 49, 143 So. 1. Therefore, where an assignee of oil leases contracts to drill an oil well and the lease reverts to the assignor upon the deliberate breach of the promise to drill, the assignor may recover as his damages both the loss sustained and profits foregone.

The nature and circumstances of the contract lead to the inference that the parties contemplated that in the overriding royalty a profit or gain would accrue to O'Meara from defendant's performance of the contract. We said in Prejean v. Delaware-Louisiana Fur-Trapping Company, Inc., 5 Cir., 13 F.2d 71, 72:

"If from the nature or circumstances of a contract, it may be inferred or presumed that the parties to it contemplated that profits or gains would accrue to one of them from performance, and it is reasonably certain that performance of the contract would have that result, the party who is deprived of such gains or profits by a breach of the contract is entitled to recover the amount of his loss so caused, unless such loss is open to the objection of remoteness or uncertainty. Uncertainty as to the amount of the damages does not prevent a recovery, if evidence adduced is sufficient to enable the court or jury to make a fair and reasonable finding in respect thereto. A party who has broken his contract cannot escape liability because of a lack of a perfect measure of the damages caused by the breach. It is enough if damages are the direct result of the breach and the evidence furnishes sufficient data for an approximate estimate of the amount thereof. Anvil Mining Co. v. Humble, 153 U.S. 540, 14 S.Ct. 876, 38 L.Ed. 814; Emerson v. Pacific Coast, etc., Packing Co., 96 Minn. 1, 104 N.W. 573 [574], 1 L.R.A.,N.S., 445, 113 Am.St.Rep. 603, 6 Ann.Cas. 973; Cothern v. Julia Lumber Co., 140 La. 733, 73 So. 845; Schleider v. Dielman, 44 La. Ann. 462, 10 So. 934; Kelly v. Devall, 41 La.Ann. [234], 235, 5 So. 657; Des Allemands Lumber Co. v. Morgan City Timber Co., 117 La. 1, 41 So. 332; Brown v. Pro-

ducers' Oil Co., 134 La. [672], 678, 64 So. 674; Malone v. Reynolds, 213 Ala. 681, 105 So. 891; Macan v. Scandinavia Belting Co., 264 Pa. 384, 107 A. 750, 5 A.L.R. 1502."

For the reasons assigned the judgment appealed from is amended by increasing the award from $5,000 to $20,000, and, as modified, the judgment is affirmed.

Modified and affirmed.