Mrs. Lucille B. GILLIS, widow of Alfred Gillis, and Roy M. Watson, Plaintiffs,

v.

DURBIN BOND & CO., Inc., Defendant.

Civ. A. No. 5352.

United States District Court E. D. Louisiana, New Orleans Division.

June 14, 1956.

Milling, Saal, Saunders, Benson & Woodward, J. B. Miller, New Orleans, La., for plaintiffs.

Elias Goldstein, Shreveport, La., Leonard B. Levy, New Orleans, La., for defendant.

J. SKELLY WRIGHT, District Judge.

Plaintiffs executed a mineral lease in favor of defendant covering eighty acres of land in Catahoula Parish, Louisiana. The consideration stated in the lease was the drilling of a well to a depth of 5,500 feet on the leased property. The term of the lease was six months. Defendants failed to drill a well on the property during the term of the lease and plaintiffs are here suing for damages in the amount of the cost of drilling a well, or, in the alternative, for damages based on the increase in value, if the well had been drilled, of the %₁₆ mineral royalty retained by the plaintiffs.

Plaintiff, Mrs. Lucille 'B. Gillis, is the owner of the land in suit and plaintiff, Watson, is her agent and co-lessor. Prior to the incident giving rise to this litigation, neither Gillis nor Watson had had experience with mineral leases. The defendant, Durbin Bond & Co., Inc., is engaged primarily in the development of potential oil and gas properties. The lease in question was on the usual printed form. On the space provided thereon for the stipulated cash consideration for the lease, there was inserted "the drilling of a well."[1] No cash consideration was provided anywhere in the lease. The lease did provide, however, that it would be null and void unless lessee "commences operations within six (6) months from date hereof for the drilling of a test well at a location on the lands herein leased and thereafter prosecutes the

---

1. In another part of the lease which read on the printed form "The down cash payment is consideration for this lease according to its terms * * *," the words "down cash payment" were stricken and the words "drilling of a well" inserted in pen and ink.

drilling of same with due diligence to a depth of 5500 feet unless oil or gas is discovered at a lesser depth." The terms of the lease were negotiated by the plain- tiff Watson and W. W. Lincoln, agent for defendant, both of whom testified at the trial.

Watson testified that he and Lincoln understood that the defendant was un- conditionally obligated to drill a well upon the property covered by the lease and that such obligation was the con- sideration for granting the lease. While testimony of Lincoln is in conflict with that of Watson, the latter is corroborated by other undisputed evidence, including a letter written by defendant to Wat- son four days after the date of the lease but prior to its execution by defendant, requesting that the depth of the pro- posed well be reduced by 200 feet. Wat- son replied in writing, refusing to accede to the request and inviting the defendant to "withdraw from the deal" if it felt so disposed. Thereafter the defendant ex- ecuted the lease but failed to drill during the six months term provided therein.

Defendant did, however, during the term of the lease in suit, drill a dry hole on adjoining property covering which it also owned a mineral lease. Thereafter, when called upon in writing by Watson to complete its contract by drilling a well on the Gillis property, de- fendant replied offering to surrender the lease and stating that since the dry hole on the adjoining tract indicated the un- likelihood of a successful well being drilled on the land in suit, no well would be drilled. Defendant's offer to surren- der the lease was rejected by plaintiffs' counsel and the lease expired by the pas- sage of the six months provided therein as its term.

Plaintiffs contend that they entered in- to a contract of lease with the defendant in which, in return for a mineral lease covering 80 acres of land, the defendant obligated itself to drill a well thereon, that the term of the lease has expired without such well being drilled and that, therefore, defendant is liable in dam- ages.

Defendant contends that it was not ob- ligated to drill a well, that the lease in question was without consideration, that it was affected with a potestative con- dition [2] and that it was a unilateral pro- posal by plaintiffs which defendant failed to accept by drilling a well. In short, defendant says that the lease in ques- tion was a nudum pactum and that the plaintiffs at any time during the term of the lease, or even the day after the lease was executed, could have otherwise disposed of the mineral interest in the property. In the alternative, defendant argues that if the lease is found to be a valid contract binding defendant to drill a well, then the penalty for breach there- of by it is limited to forfeiture of the lease. Relying on LSA–C.C. Art. 2276,[3] defendant also contends that the alleged contract of lease is clear and unambigu- ous and that parol evidence may not be admitted to explain its terms.

■ Defendant is right. The contract of lease in suit is clear and unambiguous. Without question it obligates defendant to drill a well on plaintiffs' 80-acre tract within six months. The drilling of a well is the consideration for which the plaintiffs gave the defendant the exclu- sive right to explore for minerals on their 80-acre tract. Usually, as shown by the printed lease form, the considera- tion for this exclusive right to explore for minerals, or mineral lease of the premises in question, is the payment of cash. In the lease in suit, however, the plaintiffs were not interested in a cash payment. They were interested in hav- ing a well drilled on their property. And the defendant agreed so to do, conse- quently the insertion of the words "drill- ing of a well" in the two places provided in the printed lease form for the cash down payment. Thus the intention of

2. See LSA–C.C. Art. 2024, 2034.

3. LSA–C.C. Art. 2276 reads:
    "Neither shall parol evidence be ad-

mitted against or beyond what is con- tained in the acts, nor on what may have been said before, or at the time of mak- ing them, or since."

the parties that a well be drilled on plaintiffs' premises within six months is clear and unmistakable.

It is true that the evidence in this case shows that no reasonably prudent operator would have drilled a well on the Gillis tract after the dry hole on the adjoining property. However, Durbin Bond & Co., as reasonably prudent operators, knew when it entered into the lease with the plaintiffs that a dry hole on an adjoining tract might condemn plaintiffs' property. In spite of this knowledge, it unconditionally agreed to plaintiffs' demand that a well be drilled on their property and the lease was predicated upon this consideration. Under the circumstances, it cannot be heard now to complain.[4]

The cases cited [5] in support of defendant's position herein will not bear analysis. The leases in those cases show either that there was no obligation on the part of the lessee to drill, or that, on the failure of the lessee to drill during the prescribed primary term of the lease, the lease would come to an end without further liability between the parties. This case is ruled rather by Fite v. Miller, 192 La. 229, 187 So. 650, 122 A.L.R. 446, and 196 La. 876, 200 So. 285, and Cockburn v. O'Meara, 5 Cir., 141 F.2d 779 and 155 F.2d 340, which hold that where the consideration for the lease is the drilling of a well, failure to drill the well within time prescribed is a breach of the lease entitling lessor to damages. Cockburn .v. O'Meara, supra, is also authority for rejecting defendant's alternative plea to the effect that since the lease provided that it would become null and void unless lessee commences operations in six months, the penalty for breach thereof by failure to drill is limited to forfeiture of the lease.

Actually, the more difficult question here is the measure of the plaintiffs' damages. Again relying on Fite v. Miller, supra, plaintiffs contend that they are entitled to the cost of drilling the well provided for in the lease. On the question of damages, however, this case is ruled not by Fite v. Miller, supra, but by Cockburn v. O'Meara, supra. In Fite v. Miller, the plaintiff, a lessee himself, assigned to the defendant mineral interests in the leased property in consideration of assignee's drilling a well. There was no provision in the lease for the return of mineral interests assigned in the event the well was not drilled. Under those circumstances, the Louisiana Supreme Court held that the measure of damages was the cost of drilling the well. However, in Cockburn v. O'Meara, the organ of the court, formerly prevailing counsel in Fite v. Miller, distinguishing Fite v. Miller, held that where, as here, the contract provides that the mineral interest transferred therein will revert to the lessor or assignor for failure to drill the well, then the measure of damages for breach of contract is not the cost of drilling the well, but the increase in the value of the royalty interest retained by the assignor. Without dispute, that increase here would have been approximately $5,300 if the well had been drilled as required by the contract.

In an effort to bring their case for damages under Fite v. Miller, supra,

---

4. In Fite v. Miller, infra, Miller, after drilling a dry hole on one 10-acre tract, refused to drill a well on the adjoining 10-acre tract to the south as required by the lease, because the dry hole had condemned it as an oil property. The Supreme Court of Louisiana, in disposing of this defense, said, 187 So. at page 653:
    "In this case, where the obligation of Miller to drill the well to the depth specified, on the southern 10-acre tract, was an absolute and unconditional obligation, and where the carrying out of the obligation was paid for by Fite, it cannot be said that Miller was at liberty to violate his obligation with impunity, on the theory that to fulfill the obligation might not have been of any benefit to Fite."

5. Joyce v. Wyant, 6 Cir., 202 F.2d 863; McInnis v. Danciger Oil & Refineries, Inc., 5 Cir., 119 F.2d 720; Bland v. Barkalow, D.C., 117 F.Supp. 1; Godfrey v. Lowery, 223 La. 163, 65 So.2d 124; Noxon v. Union Oil Co. of California, 210 La. 1074, 29 So.2d 67; Fogle v. Feazel, 201 La. 899, 10 So.2d 695.

instead of Cockburn v. O'Meara, supra, plaintiffs argue that here there was no forfeiture of the lease, that the term thereof expired and, consequently, no interest reverted back to plaintiffs by reason of the failure of the defendant to drill a well. The argument is interesting but unavailing. Here the defendant advised plaintiffs before the six months had run that it would not comply with its obligation to drill and offered to surrender the lease. Plaintiffs' refusal to accept that offer cannot change the measure of damages to defendant's detriment. Plaintiffs' duty is to minimize their damages, not magnify them.

Judgment for plaintiffs.