**DURBIN BOND & CO., Inc., Appellant,**

v.

**Mrs. Lucille B. GILLIS, Widow of Alfred Gillis, and Roy M. Watson, Appellees.**

No. 16397.

United States Court of Appeals
Fifth Circuit.

March 14, 1957.

Rehearing Denied April 12, 1957.

Elias Goldstein, Shreveport, La., Leonard B. Levy, New Orleans, La., for appellant.

J. B. Miller, David J. Conroy, New Orleans, La., Milling, Saal, Saunders, Benson & Woodward, New Orleans, La., for Mrs. Lucille B. Gillis and Roy M. Watson, plaintiffs-appellees.

Before RIVES, TUTTLE and JONES, Circuit Judges.

TUTTLE, Circuit Judge.

This is an appeal from a judgment by the trial court without a jury in favor of the plaintiffs who sought damages from the defendant, as lessee under an oil lease on eighty acres of land for the failure of lessee to drill a well in search for oil or gas, which plaintiffs asserted it obligated itself to do under the terms of the lease.

The appeal presents two questions for review: The first is whether the lease imposed an absolute liability on the lessee to drill a well notwithstanding the drilling of a dry hole on an adjacent tract or merely imposed such obligation on lessee as a condition of its extending the primary six month term. The second is whether, assuming the obligation to drill was absolute, the court found the correct measure of damages.

In the view the trial court took of the lease agreement, with which we agree, the facts relating to liability are simple and undisputed. On September 15, 1954, the parties executed a lease on eighty acres of land owned by plaintiff, Mrs. Gillis. It recites in paragraph 1 thereof that it was granted "in consideration of the drilling of a well, by lessee, on the hereinafter described land," with the further recitation, at the end of the same paragraph, that "the drilling of a well is consideration for this lease according to its terms * * *." No other consideration was recited, or, in fact, given by defendant for the acquisition of the lease.

The lease was granted for "a term of six (6) months" from date (called "primary term"), and as long thereafter as minerals were produced or operations conducted, as therein provided, the lease containing the further clause that it shall be null and void unless the lessee "commences operations within six (6) months from date hereof for the drilling of a test well at a location on the lands herein leased and thereafter prosecutes the drilling of same with due diligence to a depth of 5500 feet unless oil or gas is discovered at a lesser depth, or unless an impenetrable formation or condition is encountered at a lesser depth * * *."

On February 7, 1955, after having drilled a dry hole on adjoining property, defendant offered to release the lease in question, but plaintiffs, on February 10, 1955, through their attorney, refused to accept the release and demanded that the disputed well be drilled within the stipulated term, i. e., prior to March 1, 1955.

On February 16, 1955, the offer to release was reiterated by defendant, and on February 21, 1955, the offer was again refused by plaintiffs and demand again made for the drilling of such well.

Defendant neither commenced operation for drilling nor drilled any well up-

on the property covered by said lease within the term thereof.

The district court, finding that the lease contract was "clear and unambiguous," held that "without question it obligates defendant to drill a well on plaintiffs' 80–acre tract within six months" and that the measure of damages for breach of the contract was the increase in value of plaintiffs' royalty (meaning the amount the owners could have realized from selling their anticipated royalties) which would have been caused by the drilling of such well. This increase the court found to be $5,300.

The appellant places its greatest reliance on the argument that the decisions of the Louisiana courts have uniformly held that a contract such as here before the court must be construed as being no more than on option to the lessee to drill on the land under the penalty of losing the lease unless he does so. In support of this proposition appellant's brief cites a large number of cases in which, to be sure, the court held substantially as contended for by appellant. We agree with the trial court, however, that so far as supporting appellant's contention as to the proper construction of the actual lease here in issue, the cases cited "will not bear analysis." The reason for this is that the language of the leases in the several cases are different in substantial respects from that which we have to construe. As an illustration, the case of McInnis v. Danciger Oil & Refining Co., 5 Cir., 119 F.2d 720, 721, is cited in support of appellant's contention. The most casual reading of the lease there involved shows that it contains on its face a distinguishing feature since it provided specifically that upon failure to perform the drilling requirements, the lessee would forfeit all of its right in the lease, which lease would then revert to the grantor "without further liability of either party."

■ We agree with the district court that the question of liability on a lease which specifically provides that the drilling of a well is the consideration for the granting of the lease is answered in fa-

vor of appellees here by the case of Fite v. Miller, 192 La. 229, 187 So. 650, 122 A.L.R. 446, and 196 La. 876, 200 So. 285, and our own decision in Cockburn v. O'Meara, 5 Cir., 141 F.2d 779, and 155 F.2d 340. We think it clear that there can now be no question as to the liability of a lessee to respond in damages for a failure to carry out his expressed contractual obligation to drill a well under the present lease.

We therefore conclude that the trial court correctly construed the written lease contract as unambiguously requiring that the lessee drill a well on the 80–acre tract within the primary term of six months, in default of which it would be required to respond in damages to the plaintiffs below.

■ As to the question of damages, the record here does not present to this Court the same problem as was presented to the trial court. There the plaintiffs contend that Fite v. Miller, supra, stood for the proposition that the measure of damages was the cost to the lessee of drilling the well. Such was the holding of the Louisiana court on the lease there in dispute. The trial court, however, decided this issue against appellees and used as a measure of damages the increase in the value of the royalty interest retained by the assignor. To this measure of damages appellees do not except. They are content with the measure adopted by the trial court. This is clearly in accordance with the decisions of this Court in Cockburn v. O'Meara, supra, the theory being that if appellant had performed its agreement to drill the well this fact would have immediately given an added increment of value to the plaintiffs' reserved royalty interest in the minerals. It therefore becomes necessary for us to consider whether the evidence as to what this value was, taken most favorably for the appellees, supports the $5,300 judgment.

■ In the first place it must be remarked that the expert witness who testified on behalf of plaintiffs evidenced a clear understanding as to the method of arriving at the dollar value to at-

tribute to the added increment in the event a well should be drilled. His testimony, however, is far from satisfactory when he stated that his estimate totalling $5,300 was based on the assumption that "there are no dry holes in the immediate vicinity," since it is to be remembered that the lessee had drilled a dry hole on the adjacent tract. Nevertheless this witness positively stated that the dry hole would not "condemn" the eighty acres, by which we understand he meant that it would not remove all hope of successful drilling on this tract.

Under careful questioning by the court, as well as by counsel, it seems clear that the testimony of the expert witness established his firm opinion as follows on the assumption that there had been no dry well in the vicinity: The drilling of a well gives an increment of value of $50 per acre for the forty-acre tract on which the well is drilled, assuming the royalty to be one-eighth; it also gives an added increment of $25 per acre for each forty-acre tract that is considered as an offset; an offset is each forty-acre tract immediately to the north, south, east or west; it would also add an increment of $15 an acre for each forty-acre indirect offset; an indirect offset is the forty acres to the northeast, southeast, northwest and southwest; because of the ownership by plaintiffs of other lands south and southwest of the eighty-acre tract, plaintiffs would have profited more if defendant had drilled the required well on the south forty rather than the north forty of the eighty acres under lease; the total increment that would have accrued to plaintiffs if defendant had drilled a well on the north forty would be valued at $4,500; the total value if it had been drilled on the south forty would have been $6,100; since the defendant could have elected whether to drill on the north or south forty it would be appropriate to average these amounts at $5,300 (the figure on which the trial court based its judgment).

When it was called to the witness's attention that the dry hole had been drilled on the forty-acre Hormon tract immediately adjacent to the north forty of the leased tract, it is clear that his opinion was to the following effect: This fact virtually condemned the north forty acres; it did not affect the south forty; therefore if the well had been drilled on the south forty even after the drilling of the dry well on the Hormon tract, all the figures would stand with respect to the increment of value except as to the increment attributed to the north forty acres as a direct offset of the south forty; the figure which he had attributed to this offset tract was $1,500.

It appears that the court construed the testimony merely as expressing the view of the witness that the north forty would be condemned as a tract on which to drill and since the south forty was not condemned the entire added increment would still be appropriate as a measure of damages to the plaintiffs. A close analysis of the testimony, however, makes it clear that the north forty-acre tract was not only condemned as a site for drilling of the dry well, but it was also condemned as having any royalty value by reason of being an offset tract if the well were drilled on the south forty. The judgment should therefore have been for $4,600, since there would have been no added value as to the north forty acres if the lessee had proceeded to drill the required well on the south forty-acre tract. The $1,500 must be deducted from the $6,100 rather than the $5,300, because it is clear that there would be no need for averaging the two figures in view of the testimony that the north forty-acre tract was condemned by the dry hole.

There remains the contention of the appellant that even though it could be shown that there would be an increase in royalty if the well had been drilled, plaintiffs were not entitled to recover because there was no proof that they were willing to sell their royalties or had an offer for them. Appellant relies on the case of Fite v. Miller, supra, as establishing the rule that in such a situation plaintiffs must not only prove that the royalties had a value but that they were willing to sell at such a figure.

The cited case does not support this principle. In the second appearance of the Fite case [196 La. 876, 200 So. 287] in the Louisiana Supreme Court it is clear that the court rejected the proof of increased royalties not because there was no proof that the party would have traded for them but because the proof was "exceedingly remote and purely speculative." The Cockburn case which was decided by this Court after the Fite case does not consider that the measure of damages applied by it, which we follow here, was in conflict with the ruling of the Louisiana Supreme Court in the Fite case, although in its first appearance here Judge Lee discussed at length the different measures of damages applied by the two courts. He applied a different measure because of a difference in the terms of the respective leases. We find nothing in either the Fite case or in the Louisiana jurisprudence that requires a departure from the ruling of this Court in Cockburn v. O'Meara, supra.

The judgment for plaintiff below is reduced to $4,600 and as so reduced is

Affirmed.