## Sexton v. Security Insurance Co. of New Haven, Connecticut

*Curtze & Gent,* for plaintiff.

*Quinn, Leemhuis, Plate & Dwyer,* for defendant.

Evans, P. J., June 18, 1957.—We have here under consideration a motion for judgment on the pleadings under facts concerning which there is no dispute. The matter is interesting, particularly in that it raises the question as to the effect of a New York statute on an automobile liability policy executed in that State. There is no appellate authority in Pennsylvania on that phase of the problem before us.

On or about February 4, 1953, defendant through its authorized agent, Daniel W. Witter Agency, of Wellsville, N. Y., issued an automobile liability policy, no. AL 62984, to plaintiff Allan Sexton. The policy was delivered to plaintiff at his residence in New York State, and the premium was paid by plaintiff in the State of New York, where he was and is now a citizen.

Plaintiff was operating his vehicle described in said policy of insurance and with his wife, Doris Sexton, as a passenger, became involved in an automobile collision two miles from Sabula, in the State of Pennsylvania. Subsequent to this accident, which occurred August 30, 1953, Doris Sexton, wife of plaintiff, brought action against Donald Marshall and Carmen Toney in the United States District Court for the Western District of Pennsylvania, at civil action number 336, Erie, Pa., to recover damages for injuries

suffered in the accident. In said action defendants, under order of the court, joined Allan Sexton, plaintiff here, as a third-party defendant.

Allan Sexton directed the suit papers to defendant through defendant's authorized agent, Quinn, Leemhuis, Plate and Dwyer, a firm of attorneys in Erie, Pa. James B. Dwyer, Esq., a member of this firm, entered an appearance for the third-party defendant, Allan Sexton.

On or about March 1, 1955, defendant notified plaintiff that it refused to defend him in the action referred to, and on March 12, 1955, returned the suit papers and advised him to retain his own counsel. Plaintiff retained the law firm of Brooks, Curtze and Gent, and at a trial in Federal court held September 16, 1955, a verdict was rendered in favor of Doris Sexton against Donald Marshall and Carmen Toney in the amount of $15,500 and costs, and on the same day the jury rendered a verdict in favor of Donald Marshall and Carmen Toney against Allan Sexton for contribution in the action brought by Doris Sexton against them. Judgment was entered on these verdicts as returned.

The judgment of Donald Marshall and Carmen Toney against plaintiff was in the amount of $5,166.66, plus one third of record costs in the amount of $62.86. On October 14, 1955, plaintiff in the case before us paid Donald Marshall and Carmen Toney the amount of the judgment against him for contribution. He also incurred expenses of $500 in counsel fees to Brooks, Curtze and Gent and made demand upon defendant for reimbursement. It is stipulated of record that counsel fees in the sum of $500 are reasonable for services rendered plaintiff in the Federal court litigation.

Defendant on October 4, 1955, notified plaintiff that it refused to pay the judgment with costs and counsel

fees and now defends against any responsibility therefor under the terms of the insurance contract in effect at the time of the accident and the law of the State of New York, which it contends is by operation of law made a part of the said contract.

In paragraph I, "Coverage A—Bodily Injury Liability", defendant agreed "to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or use of the automobile."

Paragraph VI of the policy provides:

"This policy applies only to accidents which occur during the policy period, while the automobile is within the United States of America, its territories or possessions, Canada or New Foundland, or is being transported between ports thereof, and is owned, maintained and used for the purposes stated as applicable thereto in the declarations."

In paragraph II(a), "Defense, Settlement, Supplementary Payments", defendant agreed to "defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent."

The pertinent part of the New York statute relied upon reads as follows:

"No policy or contract shall be deemed to insure against any liability of an insured because of death of or injuries to his or her spouse or because of injury to, or destruction of property of his or her spouse unless express provision relating specifically thereto is included in the policy": As amended L. 1940, c. 507;

L. 1941, c. 627, sec. 1; L. 1945, c. 409, effective September 1, 1945 (27 McKinney's Consolidated Laws of New York, sec. 167, para. 3).

In Williamson v. Massachusetts Bonding and Insurance Company, 142 Conn. 573, 116 A. 2d 169, the Supreme Court in Connecticut allowed recovery against the insurer on an identical policy of automobile liability insurance issued in New York when the insured husband had negligently injured his wife while driving in Connecticut. The court reasoned that coverage existed despite the lack of a specific insuring clause applicable to actions by the wife, since section 167(3) of the New York Insurance Law applied only to accidents occurring within New York State.

We must note here particularly, because it influences our conclusions, that this act was passed contemporaneously with New York Laws 1937, c. 669, which amended paragraph 57 of the Domestic Relations Law to grant to either spouse the right of action against the other. Prior to this change in the Domestic Relations Law one could not, in the State of New York, recover damages from his or her spouse resulting from automobile accidents.

About two months after the Williamson decision on similar facts, an action was brought in New Amsterdam Casualty Co. v. Stecker, 145 N. Y. S. 2d 148, in the Supreme Court of New York to have determined the same question of law, and Judge Hecht cited the Williamson case arising in Connecticut and concurred in the conclusion that the amendment to the insurance law was not intended to diminish the liability of automobile carriers generally but was intended to apply only to the cause of action created in 1937 by section 57 of the Domestic Relations Law.

In General Accident Fire and Life Assurance Corp. v. Ganser, 150 N. Y. S. 2d 705, the Supreme Court of

Kings County, N. Y., in an action for a declaratory judgment and an injunction restrained a wife from recovering under an identical automobile liability policy issued to a husband residing in New York. The automobile accident occurred in South Carolina. This overruled the decision in the Williamson case.

After the decision in the Ganser case the decision of Judge Hecht in the Stecker case was by a 3-2 decision reversed in the Supreme Court of New York, Appellate Division, 152 N. Y. S. 2d 879. It supported the reasoning of the court in the Ganser case and stated that under ordinary circumstances rights are fixed in the location where the contract is entered unless it can be found to be within the contemplation of the contract parties that the performance will take place in another jurisdiction. Proceeding further the court stated that where a contract is ambulatory and contemplates performance within many jurisdictions, the agreement would be susceptible to so many varied and contrary interpretations that the parties could not themselves understand the purport of the agreement. Consequently the court applied the rule of lex loci contractus.

It is interesting to note, however, that in Bradford v. Utica Mutual Insurance Company, decided by the Supreme Court of Albany County, New York, 39 N. Y. S. 2d 810, the court held:

"The defendant, however, did not limit itself to the kinds of risk that would be met under the laws of Massachusetts. It assumed those risks, but it also undertook to protect the plaintiff, as the contract of insurance says expressly, against liability beyond the territory of Massachusetts, wherever that liability might be incurred. Therefore the parties necessarily contemplated protection to the plaintiff against all the various kinds of liability within the definitions of the policy that might be imposed by the laws of the locality

in which the risk might arise. The defendant assumed to cover plaintiff in whatever State or territory the insured vehicle might have been driven."

This problem has not been before the New York Court of Appeals, and it is, therefore, apparent that the construction to be placed on the statute involved here insofar as the State of New York is concerned is still in doubt. The court of the State of the forum may also place its own construction upon a foreign statute, particularly where the decisions of the foreign jurisdiction are conflicting: 50 Am. Jur. 316 §324. We are constrained to conclude that the New York legislature did not intend such statute to have extraterritorial effect. The act authorizing suit between spouses and the act contemporaneously enacted protecting insurance companies where such suits are instituted, must in our opinion, be construed together.

In Pennsylvania, Act of Assembly No. 37, 1947 P. L. 80, known as the Intestate Act, and Act 38, 1947, P. L. 89, known as the Wills Act, were passed and approved by the Governor on April 24, 1947. Like the statutes in New York State these statutes did not refer directly to each other, but the court held:

"When an act is changed or repealed and a new or similar act enacted to take its place, or when the words or meaning of a statute are not explicit or clear, the intention of the legislature is to be gathered not only by a consideration of the new act but also by examining the occasion, reason or necessity for the law; the circumstances under which it was enacted; the mischief, if any, to be remedied; the object to be obtained; and the old law upon the subject": Martin Estate, 365 Pa. 280. Both if these acts were considered together to determine the intent of each of them on the matter involved.

Defendant attempts to differentiate between Sexton's liability in tort from its obligation under the contract. But in York Metal & Alloys Co. v. Cyclops Steel Co., 280 Pa. 585, at 588, the court held:

" 'Generally, as to its formalities and its interpretation, obligation and effect, a contract is governed by the laws of the place where it is made, and if it is valid there it is valid everywhere; but when it is made in one state or country to be performed in another state or country, its validity and effect are to be determined by the laws of the place of performance. It is to be presumed that parties enter into a contract with reference to the laws of the place of performance, and unless it appears that the intention was otherwise, those laws determine the mode of fulfillment and obligation, and the measure of liability for its breach.' " See also Cockburn v. O'Meara, 141 F. 2d 779, at page 782.

In Clement v. Atlantic Casualty Insurance Company, 13 N. J. 439, 100 A. 2d 273, the Supreme Court of New Jersey held:

"Generally, the rule of the *lex loci delecti*, or the law of the place where the tort or wrong is committed, controls, and the rights and liabilities arising out of automobile accident are governed by the law of the state in which the accident occurs, regardless of where the insurance policy was issued."

The court continued to say that the policy in question covered not only liability as allowed by the law of New Jersey where the contract was made but also such liability as was imposed by the law of the state *in which the accident occurred.*

We do not believe that defendant intended its contract to be as limited as it now contends. In the policy it agrees to pay on behalf of the insured all sums which the insured shall become legally obligated to pay, etc.,

anywhere in the United States and Canada. "The word 'all' needs no definition; it includes everything, and excludes nothing. There is no more comprehensive word in the language, and as used here it is obviously broad enough to cover liability for negligence. If it had been the intention of the parties to exclude negligent acts they would have so written the agreement": Cannon v. Bresch, 307 Pa. 31.

Whether or not there are any other statutes in the State of New York with reference to exclusion of insurance company liability, we do not know, but assuming that there may be we feel the word "all", at least insofar as it bears upon extraterritorial liability, is expressive of the intent to furnish indemnity under the facts in this case.

It is well known, particularly to defendant, that automobiles are used extensively throughout the United States and Canada and the users in such travel do not know and are not interested particularly in any variation of laws with respect to liability in tort. All they seek is coverage for such liability wherever and whatever it may be. In Pennsylvania, for instance, gross negligence may remove a defense of contributory negligence. In Ohio there is no right of a gratuitous passenger to recover for injuries unless the driver's conduct was wanton or willful. Speed limits, which constitute negligence per se, vary among the States and within the States. The insured may benefit or suffer from these rules of law, and the insurance carrier protecting against liability also benefits or suffers with him in his responsibility. That is exactly what the company agreed to do in the policy here involved.

Defendant contends further that irrespective of the application of the New York statute as part of the insurance contract it is nevertheless exempt from responsibility here under the law of Pennsylvania which

exempts Allan Sexton from liability to his wife, Doris Sexton, in an action of tort to recover for personal injury: Koontz v. Messer, 320 Pa. 487.

If, as we have above concluded, an action in tort is ambulatory and the law of the State wherein the liability arises determines the responsibility of defendant and perforce that of his insurer, we must hold that the insurer is here responsible as the law of Pennsylvania determines. Our law is to the effect that Doris Sexton could not have sued her husband and recovered for her injuries. Had she done so, defendant would have available to it the defense available to its insured, that is, the immunity from liability because of coverture.

But the law of Pennsylvania does allow joint tort-feasors to recover contribution from the husband, and he was, therefore, legally obligated to pay for damages because of the particular facts and law here existing.

If to make possible lower competing charges for insurance coverage, or for the purpose of enhancing profits, insurance companies intend to eliminate responsibility under certain circumstances, they should do so in a manner which will make those intentions known to the purchaser of protection. Salesmen can and no doubt do say in effect, "If you become liable for injuries to anyone anywhere in the United States or its possessions, Canada or New Foundland because of any accident arising out of the ownership, maintenance or use of the automobile, you have nothing to worry about. We will, up to the limits of our policy, pay that loss."

The customer can read the policy and see that it so provides and in our opinion is entitled to rely on the plain meaning of the words to that effect. If the company wants to exclude liability because of a possible collusion between husband and wife, it can and should

454

do so as was done by the State Farm Mutual Automobile Insurance Company in Puller v. Puller, 380 Pa. 219.

Irrespective of our conclusion with respect to defendant's responsibility for the insured's contribution to the joint tortfeasors, we must conclude that plaintiff is entitled to his attorney fees, which have been stipulated in the amount of $500. The policy provides in coverage II(*a*) that the company shall "defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraurulent."

In our opinion, defendant was required to defend on behalf of plaintiff in the original suit, which resulted in his being found liable for contribution in damages with the original tortfeasors, Marshall and Toney. "Groundless" means without grounds of any kind and includes any suit against him even though under the law of Pennsylvania recovery could not be had: Conrad v. Duffin, 158 Pa. Superior Ct. 305; Zeitz v. Zurich, 165 Pa. Superior Ct. 295.

And now, to wit, June 18, 1957, judgment is entered for plaintiff and against defendant in the sum of $5,729.52, with interest from October 14, 1955.